No. 44,254

State of Kansas, *Appellee*, v. Bobby D. Eldridge, *Appellant*.

(421 P. 2d 170)

Opinion filed December 10, 1966.

*Edward G. Collister, Jr.*, of Kansas City, argued the cause, and *Charles S. Schnider, John E. Shamberg* and *Gerald T. Elliott*, all of Kansas City, were with him on the brief for the appellant.

*Richard J. Rome*, County Attorney, argued the cause, and *Raymond F. Berkley* and *Matthew J. Dowd*, Assistant County Attorneys, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: Bobby D. Eldridge, appellant, was tried and convicted for burglary of and larceny from the Nelson Supply Company in Hutchinson. He appeals from various orders of the trial court including an order overruling his motion for a new trial. He will be referred to as the defendant or appellant.

This burglary and larceny was evidenced by an entry through a broken skylight and the loss of several sets of wrenches from a display rack. The defendant was picked up several nights later at 1:06 a. m. in connection with another matter. He was searched and two of the socket wrenches were found in his pockets. He was placed in jail and was questioned later that same morning concerning the wrenches. As a result of this interrogation the defendant signed what is referred to in the briefs as a confession or

statement. The interrogation, the preparation of the confession and the signing of the confession took less than an hour and a half.

Before considering the trial errors complained of by appellant we pause to note that the abstract of appellant contains six specifications of error. His brief lists in summary form six separate questions involved, but he limits his argument and citations of authority to three points. In the counter abstract and brief appellee sets forth five questions involved and answers the six specifications of error raised by appellant. In such a state the record on appeal is utterly confusing. We suggest that when appellant desires to abandon some of his specifications of error he should so state in his brief. This would assist both opposing counsel and this court.

The main thrust of the appeal is directed toward matters extrinsic to the actual trial proceedings in the case. These matters were not in evidence before the jury except for the written confession. The claims of error arise by reason of publicity given the case by two radio stations in Hutchinson, and relate to various trial tactics employed by the defendant and passed upon by the court outside the presence of the jury. We will consider the errors claimed in the order presented by appellant in his argument and citations of authority.

The defendant first complains that the trial court erred in admitting the confession of the defendant. A copy of this confession does not appear in the record on appeal and we do not speculate as to its contents. The record discloses that the trial court held a separate hearing outside the presence of the jury to determine whether the statement was voluntary and whether the defendant waived the constitutional privilege against self-incrimination guaranteed by the Fifth Amendment to the Constitution of the United States. The officers who took the statement testified to the facts and circumstances surrounding the interrogation leading up to the confession. This signed statement was obtained one hour and twenty minutes after interrogation was begun. The defendant was first advised that he had a right to an attorney, but he stated he did not want one. He was further advised that he did not have to answer questions and that anything he did say might be used against him. The judge's order denying the motion for new trial indicates that the body of the statement disclosed that he was advised of these constitutional rights and privileges, that he read the statement and he signed the same. The court found that no force or

threats were used to obtain the statement, that the facts set out in the statement were further corroborated by other independent evidence in the case and that the statement was freely and voluntarily given. We approve the trial court's finding that it was freely and voluntarily given.

The appellant cites various cases in support of this claim of error, including *Bram v. United States,* 168 U. S. 532, 42 L. ed. 568, 18 S. Ct. 183. *Bram* is authority on a general statement of law that the admission into evidence depends upon the facts of each case and the trial court must determine whether a statement was given freely, voluntarily and without compulsion or inducement of any sort. The facts of that case, however, are entirely dissimilar to defendant's case. In *State v. McCarther,* 197 Kan. 279, 416 P. 2d 290, this court followed the rule requiring that the voluntary nature of a statement should be determined in a separate hearing by the trial court outside the presence of the jury before such statement can be introduced in evidence. A separate and complete determination was made in our present case. The trial court complied with the rule in *McCarther.* Appellant cites *McCarty v. Hudspeth,* 166 Kan. 476, 201 P. 2d 658. There a sixteen year old boy was not advised of his right to counsel, was never offered counsel and did not refuse counsel but entered a plea of guilty to the charges filed. Here the defendant, Eldridge, stated he did not want counsel during the questioning which resulted in the written statement, and later counsel was appointed and did represent him at the trial. The case of *Escobedo v. Illinois,* 378 U. S. 478, 12 L. ed. 2d 977, 84 S. Ct. 1758, encompasses an entirely different set of facts than those in our present case. In *Escobedo* the defendant was deprived of counsel by a concerted effort on the part of the officers. He repeatedly requested permission to advise with his lawyer before making a statement. His lawyer was at the police station and repeatedly requested permission to advise with his client. The lawyer talked with several of the officers at the police station and was consistently refused permission despite his repeated efforts. The lawyer lodged an official complaint with the head of the police department. Escobedo was kept in handcuffs and required to remain standing throughout the interrogation. He appeared nervous, upset, agitated and was suffering from lack of sleep when the statement was obtained. We do not see sufficient similarity with our present case to justify a reversal of the trial court on this

question.  The facts of *Miranda v. Arizona*, 384 U. S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602, are readily distinguishable from those of our present case and we note that the date of *Miranda* was June 13, 1966.  The law of that case does not apply under the holding in *Johnson v. New Jersey*, 384 U. S. 719, 16 L. ed. 2d 882, 86 S. Ct. 1772.  In *Johnson* the United States Supreme Court said:

"We hold that *Escobedo* affects only those cases in which the trial began after June 22, 1964, the date of that decision.  We hold further that *Miranda* applies only to cases in which the trial began after the date of our decision one week ago."

The trial of defendant's case began March 1, 1965.

Our statute K. S. A. 60-460 (f) sets forth the requirements for admission of a confession in a criminal proceeding and after an examination of the record of the present trial we find the safeguards therein provided were followed by the trial court in admitting the confession in evidence and we see no reason to overturn the trial court's finding that it was freely and knowingly made in full compliance with the requirements of law.

Appellant next argues that he was deprived of a fair trial by adverse and unfair publicity given to him and his witnesses by two Hutchinson radio stations.  The record in this case indicates that the publicity complained of consisted of several short one minute news broadcasts by local stations beginning on February 18 and continuing February 19, 25, 26, 27 and March 1, 2 and 3.  These related to the progress of the case in the court and the trial tactics employed by the defendant.  A motion for change of venue, a motion for mistrial and a motion to cite police officers for contempt were filed by defendant and became subjects of editorial comment by the newscasters.  The newscasts included references to defendant's marriage which occurred while he was being held in jail.  Publicity was given to other charges pending against the defendant and mention was made of a prior conviction in Iowa.  During the progress of the trial both stations broadcast a statement attributed to the county attorney saying that several of defendant's witnesses would be prosecuted for perjury.

The question of the propriety of all of these newscasts is not here decided.  This court does not approve unrestrained publicity which might affect a fair trial for a defendant.  When it is shown that such publicity is massive, pervasive and results in influences on the jury which are disruptive and prejudicial we will not hesitate to say

there has been a denial of fair trial as guaranteed by the due process clause. However, there was nothing in the nature of this crime or in the publicity accorded the trial which would create indignation and hostile sentiment in the community. There is no showing in this record that a single juror was cognizant of these broadcasts or in any way influenced by them. The decorum in the courtroom appears to have been properly maintained entirely free of pervasive and disruptive influences.

Defendant predicates errors upon the refusal of the trial court to grant a change of venue. The motion for change of venue was filed February 11, and the first newscast complained of was made one week later on February 18. The procedure to obtain a change of venue is statutory. This case was filed in Reno county which comprises a single county judicial district. The applicable statutes read:

"*K. S. A. 62-1319.* Whenever it shall appear, in the manner hereinafter provided, that the inhabitants of the entire district are so prejudiced against the defendant that a fair trial cannot be had therein, the cause shall, by order of the court or judge, be removed to another district, in which such prejudice is not alleged to exist.

"*K. S. A. 62-1320.* Such order of removal as specified in the two preceding sections shall be made on the application of the defendant; or, where the defendant is under the age of sixteen, on application of the parent or guardian of such infant; and if the infant has no parent or guardian, then on the application of any two respectable citizens of the county where the cause is at issue.

"*K. S. A. 62-1321.* In the petition for a change of venue the applicant shall set forth the facts upon which the application is made, *and the truth of the allegations in the petition shall be made to appear, by affidavits, to the satisfaction of the court.* Notice of such application must be given to the county attorney, who may resist such application by counter affidavits." (Emphasis supplied.)

The defendant did not support his motion for change of venue by a single affidavit. No evidence was adduced to establish prejudice against the defendant in the community. There was no attempt to show that a fair trial could not be conducted. The state filed fifteen affidavits by people of the county who were not aware of any prejudice against defendant and these people stated they knew of no discussion or excitement concerning the defendant's case in the community. The record fails to uphold defendant's claim of error for failure to grant a change of venue. Our cases quite uniformly hold that specific facts and circumstances showing prejudice must be proven to the satisfaction of the trial judge. (*State v. Furbeck,* 29 Kan. 532; *State v. Turner,* 193 Kan. 189, 392 P. 2d 863; *State v. Poulos,* 196 Kan. 253, 411 P. 2d 694; cert. den.

385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63.) We note that the defendant never challenged the array and passed the jury for cause on *voir dire*. The defendant waived three of his six peremptory challenges. Each juror who sat in the case denied under oath that he had any preconceived opinion of the guilt or innocence of the accused and agreed to decide the case on the law and evidence presented in the trial.

Defendant moved for a mistrial after the case had gone to the jury because of publicity given by the radio stations regarding statements attributed to the county attorney. It was broadcast on radio that perjury charges were going to be filed against defense witnesses. Error is assigned on the order overruling this motion. The defendant's father, mother and sister testified in support of a plea of alibi. They testified that early on the day of the burglary the entire family, including defendant, went to Oklahoma and did not return for several days. On cross-examination these alibi witnesses were questioned concerning the truth of their story and asked if they understood that if they were not telling the truth they might be prosecuted and found guilty of the crime of perjury. The state then brought on witnesses who testified that the mother had worked at her usual job the day of the burglary and company records indicated she had been paid for working that day. School officials testified that defendant's sister attended school the day in question and the school attendance records so indicated. The record indicates that the broadcasters were in the courtroom during the entire trial and heard this testimony. Later the broadcasters testified on motion for new trial that 98 percent of the information used in their news comments was obtained by attending the trial. They stated they talked with the county attorney during the course of the trial but there is no showing that he released the information to them. During the oral argument on the motion for mistrial the county attorney advised the court that no such information was released. The county attorney stated he had consistently maintained a "no comment" position with the newsmen, and had at one time advised one newsman to "lay off this story while the case was being deliberated."

The record discloses that the trial judge was well aware of his duty to insulate the jurors from outside influence during the course of this trial. The jurors were duly admonished by the court that they should talk to no one concerning the case, that they should decide the case on the evidence introduced at the trial, that they

should not form or express an opinion on the case until all evidence was in, and that they should not read accounts of the trial or listen to news broadcasts of the same during the trial. In the absence of any showing to the contrary we will assume these admonitions were followed. In overruling the motion for new trial the trial judge quite aptly expressed his awareness of the problems confronting the court as follows:

"The right of the people to have a free press is a vital one, but so is the right to have a calm and fair trial, free from outside pressures and inferences. Every other right including the right of a free press itself may depend on the ability to get a judicial hearing as dispassionate and impartial as the weakness inherent in men will permit. The right to a trial by jury guarantees to one accused of crime a 'fair trial' by a panel of 'impartial jurors'. These concepts, along with 'due process', are not susceptible to exacting definitions, and each case must necessarily rest upon its particular facts."

The complaint of defendant as to the publicity concerning perjury charges touches the question treated by this court in *State v. Handke*, 185 Kan. 38, 340 P. 2d 877. At page 42 of the opinion this court said:

"Defendant next contends that the trial court erred in denying his motion for a mistrial after one of his witnesses was arrested for perjury during the trial. As a general rule, it is prejudicial and reversible error for the judge to order the arrest of a witness for perjury in the presence of the jury and during the trial (23 C. J. S., Criminal Law, § 996, p. 357), however, that is not the situation presented. Here, the witness was arrested during the noon recess, after his testimony had been completed, outside the presence of the jury and without the knowledge of the court. Further, it appears that the trial was completed on that same afternoon. Under such circumstances, it has been held that the arrest of a witness does not constitute prejudicial error requiring a reversal of the verdict and judgment. (Cases cited.) Moreover, it was not made to appear the jury was ever aware of the witness' arrest. Without prolonging the discussion on this point, we conclude that no prejudicial error resulted which would require a reversal of the judgment."

In the present case no perjury charges were filed and no arrests were made during the trial. Our complaint here refers to unfavorable publicity given by radio stations without any showing that the jury was ever aware of this publicity.

We have examined the case of *Sheppard v. Maxwell*, 384 U. S. 333, 16 L. ed. 2d 600, 86 S. Ct. 1507, which is urged upon this court by appellant. The United States Supreme Court there determined that a failure by the trial judge to protect the defendant from massive, pervasive, and prejudicial publicity and disruptive influences attending the prosecution deprived the defendant of a fair

trial in violation of the due process clause of the Fourteenth Amendment. The court recognized that each case must rest upon its own facts. The factual differences in the two cases are so great there is little comparison. The court in *Sheppard* pointed out the extensive newspaper, radio and television publicity, both of a national and local character, which in many instances did not bear upon any evidence presented in court. The jurors were subjected to interrogation and exposed to publicity. The trial lasted nine weeks and reporters were seated inside the bar of the court a few feet from the jury. Most of the seats in the courtroom were filled with representatives of the news media who moved in and out of the court at will and even handled and photographed trial exhibits lying on the counsel table. The names and addresses of the jurors were published and the jurors received letters and phone calls concerning the case. Prospective witnesses were interviewed by the news media and in some cases their testimony was quoted verbatim in the press before they testified. There was a carnival atmosphere at the trial which was ever present in the courtroom while Sheppard was being convicted of the murder of his wife. This present record merely reflects a case of burglary and larceny of tools worth about $200.00. There were no disruptive influences in the courtroom pervading the prosecution. This defendant may have received more publicity than is usual considering the nature of the case but the record is barren of any showing that defendant failed to receive a fair trial.

The appellant cites various cases on the question of prejudice at a trial by reason of publicity which we now examine in turn. The case of *Marshall v. United States*, 360 U. S. 310, 3 L. ed. 2d 1250, 79 S. Ct. 1171, authorizes the granting of a new trial when it is shown that a juror reads a newspaper account or hears a broadcast of acts and reputation of the accused prior to commission of the crime with which he is charged. This prejudicial information was shown to have been placed in the mind of a juror by the news media. The case of *Estes v. Texas*, 381 U. S. 532, 14 L. ed. 2d 543, 85 S. Ct. 1628, covers the trial of a much publicized financier who was convicted of the offense of swindling, after a trial of great notoriety which was televised and broadcast from the courtroom over his objection. There was no such publicity originating from the courtroom in our present case. The appellant cites *Turner v. Louisiana*, 379 U. S. 466, 13 L. ed. 2d 424, 85 S. Ct. 546. That case

covers a three day trial for murder in which two deputy sheriffs were the principal witnesses for the prosecution and spent most of the three days in continuous and intimate association with the jurors, eating with them, talking with them and running errands for them. We fail to see any similarity to the facts here presented. In *Rideau v. Louisiana*, 373 U. S. 723, 10 L. ed. 2d 663, 83 S. Ct. 1417, the defendants were charged with armed robbery, kidnapping and murder. A televised interview from the jail consisted of interrogation by the sheriff and admissions by the defendant that he perpetrated the crimes with which he was later charged. It was shown that three members of the jury had seen and heard the televised interview, and two other jurors were deputy sheriffs of the county. This is not authority in our case. In the case of *Irvin v. Down*, 366 U. S. 717, 6 L. ed. 2d 751, 81 S. Ct. 1639, the defendant was sentenced to death for murder. Six murders had been committed in the same vicinity and the locality was flooded with releases by news media before and after the arrest. Hysteria prevailed before the arrest and indignation continued after the defendant was jailed. Under the circumstances set forth in that opinion a change of venue was not only proper but required. We see no parallel between the facts of that case and the present one. In *Powell v. Alabama*, 287 U. S. 45, 77 L. ed. 158, 53 S. Ct. 55, the defendants in a capital case were not assigned counsel until immediately before the trial and the defendants were young, ignorant and surrounded by hostile sentiment. They were paraded back and forth under guard of soldiers and were charged with an atrocious crime regarded with special horror in the community and put in peril of their lives. The reversal did not turn upon publicity given the case by news media but was based upon a denial of counsel.

Appellant claims error because of the refusal of the trial court to cite the officers of the police department for contempt of court. It appears that four days before the trial of the case and after an attorney had been appointed two city police officers were permitted to question the defendant in private concerning other unsolved crimes in that city. The defendant's attorney was not notified. He filed an unverified motion in the court requesting that the officers appear and show cause why they should not be held in contempt of court and confined in jail. The officers moved to strike defendant's motion and expunge the allegations from the record and countered with allegations that the statements by defendant were

untrue and made solely for the purpose of gaining notoriety and expression in the news media. The matter was set down for hearing after conclusion of the burglary trial. At the hearing no evidence was presented on the motion. Counsel for the defendant and for the officers presented oral argument for and against the motion and the trial court denied the same.

None of these proceedings were had in the presence of the jury. The officers were charged in the motion with improper actions occurring outside the presence of the judge. Contempts of court are direct or indirect, and proceedings are as prescribed by statute. (See K. S. A. 20-1201 *et seq.*) The procedure for indirect contempt is a separate proceeding as outlined in K. S. A. 20-1204. Any review of such proceedings is limited by K. S. A. 20-1205. They may not be reviewed as one of the specifications of error in a criminal appeal. When properly segregated from the trial proceedings as was done in this case we fail to see any prejudice to the defendant in his defense of the criminal charges. The record is completely devoid of any showing that any of the jurors had knowledge of the matter or that the defense was prejudiced thereby. The record does not disclose what other crimes were the subject of inquiry by the officers, or what information, if any, was obtained from defendant. It does not appear that defendant consented to the interrogation or that he was coerced into it. We do not by our holding wish to leave any impression that the law condones such interrogation of a defendant in private when he has counsel appointed by the court to protect his legal rights. Such improper conduct might well be an invasion of his constitutional rights under the guidelines of *Escobedo* and of *Miranda* depending upon the facts and circumstances of the case. However, the alleged improper interrogation related only to other crimes and this would not result in tainting or poisoning the evidence upon which the present conviction was based.

After consideration of all matters apparent in the record presented to this court we find no prejudicial error. The judgment is affirmed.