No. 45,572

STATE OF KANSAS, *Appellee,* v. MAX POTTS, *Appellant.*

(468 P. 2d 74)

Opinion filed April 11, 1970.

*James F. Foster,* of Wichita, argued the cause and was on the brief for appellant.

*James W. Wilson,* Deputy County Attorney, argued the cause and *Kent Frizzell,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: Max Potts was sentenced to two concurrent terms of not more than five years in the state penitentiary. He was

found guilty by a jury of the unlawful possession of a pistol (K. S. A. 21-2611) and the unlawful maiming (K. S. A. 21-435) of Gene Abrams. Gene Abrams was shot in the arm.

The altercation which gave rise to the charges took place at Mr. Abram's establishment (Marie's Place) on east Murdock street in Wichita, Kansas. The defendant entered "Marie's Place" about four o'clock in the morning on February 3, 1968. After talking with another customer about the price of bootleg whiskey the defendant was asked to leave. Mr. Abrams escorted the defendant to the front door. While Abrams was standing in the open front door, and the defendant was standing outside on the sidewalk, the defendant pulled a pistol and fired twice at Abrams. Both bullets missed their target. Abrams was attempting to telephone the police from inside his establishment when three additional shots were fired from outside of the building. Mr. Abrams testified he turned toward the plate glass window when the first shot was fired through it and watched the defendant fire two additional bullets. The second bullet hit Abrams in the arm. He described the gun used by the defendant in firing the first two shots as a .38 caliber pistol with a six inch barrel and a white handle. Abrams and the defendant had been acquainted for some time. They were not on friendly terms.

The other customer in "Marie's Place" at the time testified he had a conversation with the defendant that morning. He heard Mr. Abrams ask the defendant to leave. The last time he saw them they were approaching the front door. At that time he went to the restroom. While there he heard the first shots fired. As he was leaving the restroom the remaining shots were fired through the window. He hid in a corner near the "jukebox" and did not see who fired the shots.

Officer Hill of the Wichita Police Department arrested the defendant at his home that morning shortly after 7:00 o'clock. He did not find the gun.

With this factual background we can consider the errors specified by defendant. He contends error was committed during the trial by refusing to admit proffered testimony that J. W. Trotter owned a similar pistol and had an opportunity and motive for committing the crime.

In *State v. Neff,* 169 Kan. 116, 218 P. 2d 248, it was stated:

"Where the state relies on direct rather than on circumstantial evidence for

conviction, evidence offered by defendant to indicate a possible motive of someone other than the defendant to commit the crime is incompetent absent some other evidence to connect such third party with the crime." (Syl. ¶ 7)

In our present case the state relied upon direct evidence, testimony of eyewitnesses, that defendant shot Abrams with a pistol at close range.

J. W. Trotter testified he saw the defendant on the sidewalk after the shots were fired. Trotter was going to a nearby pool hall. The defendant was headed in the opposite direction which was away from "Marie's Place". He spoke briefly with the defendant and noticed the gun in defendant's possession. Trotter denied owning or possessing a pearl handled .38 caliber revolver.

The defendant proffered testimony and statements previously made by Abrams to the effect that he had seen a similar pistol in the possession of J. W. Trotter, that the defendant was J. W. Trotter's henchman or enforcer and that Abrams closed his business after this incident. This proffered testimony was not admitted during the trial.

It was not error to exclude the proffered statements of Mr. Abrams. The evidentiary value of these statements in the face of the direct testimony regarding the shooting is questionable.

When the state relies on direct rather than circumstantial evidence for conviction, evidence offered by defendant to indicate a possible motive of someone other than the defendant to commit the crime is irrelevant absent other evidence to connect such third party with the crime.

Ownership of the pistol is not an essential element of either of the crimes charged. The key issue was who fired the gun. The proffered evidence would at best only tend to implicate another person in defendant's crime. It would not disprove defendant's guilt.

The case of *State v. Scott*, 117 Kan. 303, 235 Pac. 380, cited by defendant, is distinguishable on the basis of what has been quoted herein from *State v. Neff*, supra. In the present case the state does not rely on circumstantial evidence for conviction. In *Scott* evidence to support conviction was entirely circumstantial.

Defendant next contends the court erred in failing to instruct the jury on the defendant's theory of the case. The only testimony as to defendant's theory of the case was by the defendant. The other proffered testimony was properly excluded by the court.

Defendant admitted he had an argument with Abrams but stated he left "Marie's Place" at Abrams' request and went home. He testified he did not shoot at Abrams and heard no shots while he was there that morning.

In *State v. Runnels,* 203 Kan. 513, 456 P. 2d 16, it was said:

"Generally the theory of the accused is adequately set forth in the instructions by including a converse charge under which the jury may find the accused not guilty if any essential element of the crime is not proven, provided such converse charge is preceded in the instruction by a recitation of all essential elements required to be proven, in language the ordinary layman on a jury can understand." (Syl. ¶ 2)

We have examined the instructions. The essential elements of the two crimes were separately set forth in language the ordinary layman could understand. The jury was instructed by including a converse charge under which they could find the defendant not guilty if the crimes were not proven beyond a reasonable doubt. In addition the court gave an instruction on the defense of alibi by which the jury was advised if the evidence of alibi raised a reasonable doubt about the defendant's presence at the time and place of the commission of the crimes charged this would be sufficient to justify an acquittal. The instructions were adequate.

Defendant's third specification of error relates to the publication of a news article which appeared in a Wichita newspaper after the trial of defendant had begun. The article referred to the defendant as a convict who was being returned from the penitentiary to face the charges, and it set forth facts about two prior convictions.

The trial court during the trial refused permission to inquire of the members of the jury to determine if any of them had read the article which appeared in the newspapaer. The trial court properly denied defendant's motion to inquire. An inquiry of this nature during the trial might place prejudicial matter before the jury and create a basis for a mistrial. Obviously the trial of a case cannot be interrupted for inquiry on each article published by the news media. There was no attempt made at the hearing on the motion for new trial to show that any member of the jury was aware that such an article had been published. (See *State v. Eldridge,* 197 Kan. 694, 421 P. 2d 170.) A motion to inquire during the trial is not a proper method to determine if members of a jury are aware of prejudicial articles published by a newspaper during the trial. (*State v. Malone,* 194 Kan. 563, 571, 400 P. 2d 712.)

Prior to the first trial adjournment the court admonished the jury

that they must decide the case on what they would hear, see and learn in the courtroom. They were admonished not to discuss the case nor permit others to discuss it in their presence. They were further admonished not to "read anything you might have occasion to read about what purports to be the facts of this case". In the absence of evidence to the contrary this court on appeal will assume the jury followed the lower court's admonitions. (*State v. Eldridge,* supra; *State v. Wright,* 203 Kan. 54, 56, 453 P. 2d 1.)

It is true the written instructions of the court given at the close of evidence did not specifically contain an instruction that the jury must consider only the evidence which was introduced and admitted during the trial. However, they were instructed to consider the evidence and all the instructions of the court in their deliberations and not be influenced by either passion, prejudice or sympathy and to return a just and true verdict according to the law and the evidence. The substance of that instruction has been previously approved. (See *State v. Gates,* 196 Kan. 216, 410 P. 2d 264.)

The defendant neither requested additional instructions on this subject nor objected to those prepared and given by the court and he is now in no position to complain of failure to give a more limiting instruction in regard to what was to be considered as evidence. (*State v. Wheeler,* 195 Kan. 184, 403 P. 2d 1015; *State v. Sims,* 192 Kan. 587, 389 P. 2d 812. See also *State v. Ringler,* 194 Kan. 133, 135, 397 P. 2d 390.) When the trial court submits all of its instructions to counsel for both sides and the defendant neither requests additional instructions nor objects to those prepared by the court on a specific subject the defendant cannot complain of the substance of those instructions on appeal.

We have examined the record in light of all errors specified by defendant and find no prejudicial error.

The judgment is affirmed.