No. 53,048

STATE OF KANSAS, *Appellee,* v. FRANKLIN YURK, *Appellant.*

(638 P.2d 921)

Opinion filed January 15, 1982.

*Laurence M. Jarvis,* of Laurence M. Jarvis, Chartered, of Kansas City, argued the cause and was on the brief for appellant.

*R. Wayne Lampson,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Franklin Yurk appeals from his conviction by a jury of two counts of aggravated robbery (K.S.A. 21-3427).

On the evening of June 17, 1980, Jeffrey Butler and Dora Fowler were robbed at gunpoint as they sat together in their car in the parking lot of a McDonald's restaurant in Kansas City, Kansas. They had been approached by two men, the defendant and one Dennis Smith. Smith pulled a gun from his pants, pointed it at Mr. Butler's head and proceeded to demand and receive money, jewelry and other valuable personal effects from the couple. The defendant's criminal involvement in this transaction is subject to dispute, although his actual presence is not contested. His testimony was that, although he was present with his friend, he was trying to talk Smith out of committing the robbery and to convince him to leave the couple alone. He also contended that after the crime he talked Smith into giving him the gun and

the stolen property so the property could be returned to the owners. The victims, on the other hand, testified that Yurk was an active participant in the crime and claimed that he directed Smith as to certain actions and that he told the couple to cooperate with Smith.

After the defendant and Smith departed, the victimized couple informed some police officers nearby of the robbery. Within a few minutes the officers located and arrested Smith and the defendant Yurk. One of the arresting officers testified that as he was approaching the defendant, he saw Yurk throw an object away which was retrieved and later identified as the gun used in the robbery. Property taken from the victims was also found in Yurk's clothing. Meanwhile, the victims had accompanied other officers to the Kansas City police station where they gave tape recorded statements of the incident. Their statements were later transcribed and then corrected and approved by the couple. This appeal grows out of defendant's second trial. He was originally tried on August 26, 1980, for two counts of aggravated robbery and one count of unlawful possession of a firearm (K.S.A. 21-4204). The jury acquitted him of the unlawful possession charge but became hopelessly deadlocked on the aggravated robbery counts. We are told that they stood eleven to one for acquittal of the defendant upon both counts. The second trial was commenced on January 26, 1981, and resulted in the conviction of the defendant upon both charges.

Defendant brings two issues to us on appeal, both of which were raised during the second trial and later renewed in his motion for a new trial.

His first point concerns the trial court's admission into evidence of the transcribed statements of the complaining witnesses taken by the police the night of the robbery. Over defendant's objection, the court allowed the written statements to be admitted as exhibits for the jury to see and take to their deliberations. The complaining witnesses had testified at trial and were cross-examined vigorously by defendant in an attempt to discredit their credibility. On redirect examination, the State introduced the prior consistent written statements to rehabilitate its witnesses.

In *State v. Parrish,* 205 Kan. 178, Syl. ¶ 2, 468 P.2d 143 (1970), we said:

"Where a witness has been impeached or his credibility as a witness has been

attacked, prior statements consistent with his testimony at the trial may be shown to rehabilitate or support the witness."

This was a case of credibility. The defendant testified that he had no criminal involvement in the robbery; the complaining witnesses testified that he did. When defense counsel vigorously cross-examined the complaining witnesses, we cannot say that their credibility was not attacked or that their prior consistent statements were not admissible.

Appellant, however, would have us apply the rule stated in *State v. Wilson*, 188 Kan. 67, 360 P.2d 1092 (1961), wherein we held that when the court permitted the jury to take the transcript of the trial testimony of the complaining rape victim into the jury room during deliberations, it prejudicially placed undue emphasis on her testimony and was equivalent to sending her into the jury room to continue to plead her cause.

In *State v. Watkins*, 219 Kan. 81, 547 P.2d 810 (1976), the defendant argued that the trial court erred in permitting the written and transcribed statements of defendant to physically go to the jury during the course of deliberations without also sending the transcript of defendant's trial testimony to the jury. In distinguishing that situation from *Wilson*, Justice Owsley speaking for a unanimous court stated:

"It does not appear that defendant objected at trial to the submission of the statements to the jury. In a similar situation we held that a defendant waived any supposed irregularity by failing to object to the giving of his statement to the jury. (*State v. Taylor*, 36 Kan. 329, 13 Pac. 550.) Even assuming a proper objection were made, we would not assign error on the part of the trial court. We have stated in the past that as a general rule it is within the discretion of the trial court to send to the jury, at its request, an exhibit which has been received in evidence. (*State v. Stiff*, 148 Kan. 224, 80 P.2d 1089.) Error will not be predicated on the admission of such evidence in the absence of a showing of an abuse of discretion which resulted in prejudice to the accused. (*State v. Morrison*, 121 Kan. 844, 250 Pac. 333.) On previous occasions we have approved the sending of various exhibits to the jury for consideration during deliberations. In *State v. Morrison*, supra, we said it was not error to permit letters that had been admitted into evidence to go to the jury room. In *State v. Stiff*, supra, we found no error in allowing a diary to go to the jury room.

"Defendant's argument on this point is based solely on the holding of this court in *State v. Wilson*, 188 Kan. 67, 360 P.2d 1092. In that case the trial court permitted the transcript of the trial testimony of the complaining witness to be taken to the jury room during deliberations. We held that by so doing the trial court placed undue emphasis on her testimony, which amounted to prejudicial error. Our decision in *Wilson*, however, was limited to a situation where evidence

taken to the jury room was the transcribed testimony of a witness at the trial. The rule of law applicable in such circumstances was stated in Syllabus ¶ 2 of the opinion:

'Under the facts as more fully set forth in the opinion, the sending to the jury room of the transcribed testimony of a witness given at the hearing of a cause on its merits is without precedent and constitutes reversible error.'

"We do not question the soundness of the rule as applied in *Wilson*, but it is clearly distinguishable from the instant case. Here, we are not dealing with the problem of submitting trial testimony of a witness to the jury. Rather, the objection relates to exhibits of incriminating statements given by defendant prior to trial. A signed confession which has been found by the court to be voluntarily given is one of the strongest forms of physical evidence available to the prosecution. We see no reason to distinguish between it and any other physical evidence of a concededly damaging nature, such as weapons, instruments of the crime, or photographic evidence which is generally taken to the jury room. On the other hand, by sending a copy of the transcribed trial testimony to the jury room there is the possibility that the jury will place greater emphasis upon it than upon the other trial testimony. (See *People v. Caldwell*, 39 Ill. 2d 346, 236 N.E.2d 706, 37 A.L.R.3d 226 [1968].) On the basis of this reasoning we believe the better rule is to treat a written confession as any other physical exhibit submitted to the jury. This approach is consistent with that taken by many courts which have considered the question. (See, 37 A.L.R.3d Anno., Taking Confession into Jury Room, p. 238.) We hold, accordingly, the trial court did not abuse its discretion in permitting the written statements of defendant to go to the jury room." pp. 90-91.

The same applies to prior consistent statements of a witness if the same are otherwise admissible as evidence as they were in this case. As long ago as 1909, Justice Burch stated:

"This court prefers to abide by the well-established rule that ordinarily whatever the jury may learn through the ear from descriptions given by witnesses they may learn directly through the eye from the objects described." *State v. Moore*, 80 Kan. 232, 237, 102 Pac. 475 (1909).

We recently said in *State v. Fenton*, 228 Kan. 658, 667, 620 P.2d 813 (1980):

"Once a case is submitted to the jury for deliberations, the jury is ordinarily given the exhibits to take into the jury room where the jurors can examine the exhibits as many times as they desire. Here, the appellant offers nothing to show that his rights were prejudiced in any way. The manner in which exhibits are handled at trial is within the trial court's discretion, and will not be disturbed except in cases of abuse."

We find no abuse of the trial court's discretion and appellant's first point is without merit.

Appellant's second point concerns a newspaper article which appeared in the local Kansas City *Kansan* the evening of January 26, 1981, after the first day of trial. The article read as follows:

"The robbery trial of Franklin Yurk, 47, began today in Wyandotte County District Court.

"Yurk is charged with two counts of aggravated robbery in the parking lot of McDonald's restaurant, 9th and Minnesota, last June 17. He is charged with robbing Jeffrey Butler and Dora Fowler.

"Yurk was convicted of grand larceny in 1951, of first degree robbery in 1962 and of armed robbery in 1968."

The following morning, at the request of counsel for the defendant, the jury was polled regarding exposure to the news article. It was then discovered that two jurors had knowledge of the article. One had been told about it by his wife; the other had actually read the article. Both jurors were questioned at length in chambers regarding the article. During the questioning of Juror Banks, who had read the article, the following exchange occurred:

"THE COURT: . . . . Mr. Jarvis might have and Mr. Lampson might have an opportunity at this time to ask you or I may ask you, first of all, what is it do you think you read about the case.

"MR. BANKS: It was a short article. It told about the robbery and it told—*the main thing that bothered me were the other charges that had been filed against the man and the convictions.*

"THE COURT: So you are aware that this type of information was in the article?

"MR. BANKS: Yes.

"THE COURT: Is this going to affect your judgment or impartiality in any way?

"MR. BANKS: *To be honest, in a way it would.* I've always been fair about everything I've done and I don't think that it would." (Emphasis added.)

Upon further questioning, the juror did say that he understood his decision must be based solely upon the evidence adduced at trial and eventually stated he believed he could render an impartial decision, notwithstanding what he had read. The court "considering the totality of the circumstances" overruled defendant's motion for mistrial. The court later restated its ruling in denying defendant's motion for a new trial on the same grounds. The record also reveals that Mr. Banks had mentioned the article to another juror but he could not recall which one. The other juror who had knowledge of the article stated his wife mentioned there was an article in the paper about a robbery trial. He disclaimed any knowledge of the contents of the article. The trial court had not admonished the jury to avoid news media coverage of the trial and no contention is made that there was any intentional juror misconduct.

The State cites *State v. Eldridge,* 197 Kan. 694, 421 P.2d 170 (1966), *cert. denied* 389 U.S. 991, (1967), and *State v. Malone,* 194 Kan. 563, 400 P.2d 712 (1965), for the proposition that a decision to grant a mistrial due to prejudicial and improper publications during trial must depend upon all the circumstances. It argues that defendant has failed to show there was any actual prejudice toward him in the minds of the jury. The State claims that since the publication was not massive, pervasive or disruptive to the trial proceedings no basis for a new trial is shown and the fact only one member of the jury actually read the article and he felt he could be fair and impartial shows the publication to be of no consequence. It is not argued by the State that the prior crimes information found in the news article would have been admissible in the trial.

We said in *Eldridge,* 197 Kan. at 697-8:

"The question of the propriety of all these newscasts is not here decided. This court does not approve unrestrained publicity which might affect a fair trial for a defendant. When it is shown that such publicity is massive, pervasive, and results in influences on the jury which are disruptive and prejudicial we will not hesitate to say there has been a denial of fair trial as guaranteed by the due process clause. However, there was nothing in the nature of this crime or in the publicity accorded the trial which would create indignation and hostile sentiment in the community. *There is no showing in this record that a single juror was cognizant of these broadcasts or in any way influenced by them."* (Emphasis added.)

In the instant case, while the publicity was not massive or pervasive, it is undisputed that "a single juror *was* cognizant" of the article and he said it "bothered" him. The record also reveals that Mr. Banks stated several times that, this being his first experience as a juror, he could not know what actual effect the prior crimes knowledge might have upon him.

To support his argument that the trial court erred in failing to grant a mistrial, defendant relies upon *Marshall v. United States,* 360 U.S. 310, 3 L.Ed.2d 1250, 79 S.Ct. 1171 (1959). In *Marshall* despite the jurors' assurances that they would not be influenced by articles revealing prior convictions, and assurances that they could decide the case solely on the admitted evidence, the United State Supreme Court ruled *per curiam* that the exposure alone created sufficient prejudice to justify a new trial.

The State attempts to distinguish *Marshall* by citing *Murphy v. Florida,* 421 U.S. 794, 44 L.Ed.2d 589, 95 S.Ct. 2031 (1975). In

*Murphy* the court said *Marshall* was decided in the exercise of the Supreme Court's supervisory authority over federal courts and that news exposure in the highly publicized state trial of "Murph the Surf" did not rise to the level of a due process violation. However, in *Murphy* the court stated:

"At the same time, the juror's assurances that he is equal to this task [that he can lay aside his impression or opinion and render a verdict based on the evidence presented in court] cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" (Citation omitted.) 421 U.S. at 800.

Although, as the State here points out, *Marshall* is not controlling law in the state courts, it is at least persuasive authority.

In *State v. Stewart*, 219 Kan. 523, 548 P.2d 787 (1976), the defendant claimed error in the trial court's rulings in a factual situation very similar to the instant case. There, the trial judge refused to grant a mistrial and refused to poll the jury when a prejudicial article had appeared in a Kansas City newspaper the evening of the first day of trial.

"The defendant's final point is that the trial court erred in denying the defendant's motion for a mistrial and in its failure to poll the jurors as to their knowledge of a newspaper article which appeared in a Kansas City newspaper on the evening of January 20, 1975, the first day of trial. On the morning of January 21 prior to the resumption of the trial, defendant's counsel moved for a mistrial and requested that the jury be polled to find out if any of the jurors had read the article. The trial judge refused to grant a mistrial or a poll of the jury on the basis that a poll would simply arouse their curiosity and cause them to run home and look at the article if they had not already seen it. The trial court had previously admonished the jury about reading newspaper accounts of the case. The newspaper article complained of was marked by the reporter as an exhibit and is before us on this appeal. *In our judgment the newspaper article would have been prejudicial if read by the jurors.* It referred to the fact that the defendant Stewart was then faced with a charge of first-degree murder in another case and that the chief deputy district attorney had stated to a reporter that the state intended to prove that Stewart and Haygood had a contract to kill Sanders. The article further referred to the fact that Stewart had already been tried once in the murder case previously and that a codefendant had been convicted of first-degree murder two weeks ago. The state argues that the publicity was unintentional, that the contents of the article were repeated to the jury on the following day anyway, that no prejudice was shown since Haygood was acquitted by the jury. In our judgment the disposition of this point is governed by *State v. Smith*, 215 Kan. 34, 523 P.2d 691, and *State v. Potts*, 205 Kan. 42, 468 P.2d 74. In *Smith* we held that a motion to inquire during trial is not a proper method to determine if members of a jury are aware of prejudicial articles published by a newspaper during the trial. A similar situation was before the court

in *Potts* where we stated that an inquiry pertaining to newspaper publicity during the trial may place prejudicial matter before the jury and create a basis for a mistrial and that the trial of a case should not be interrupted for inquiry on each article published by the news media. In *Potts* in refusing to reverse a criminal case on the grounds of prejudicial newspaper publicity we emphasized that no attempt was made at the hearing on the motion for a new trial to show that any member of the jury was aware that such an article had been published. The rule to be followed is that where the record on appeal fails to show that a single member of the jury was made aware of the publicity and when it does not appear the publicity was massive, pervasive or disruptive of the trial proceedings, no trial error appears for there is no showing that defendant was deprived of a fair trial. *Here the record on appeal fails to show that a single member of the jury was made aware of the newspaper publicity* or that the publicity was massive, pervasive or disruptive of the trial proceedings. In order to prove that members of the jury were aware of the newspaper article, counsel for the defendant could have requested a poll of the jury after it returned its verdict. In the alternative he could have subpoenaed the jurors on motion for a new trial to show that they had knowledge of the article. Under the circumstances we hold that there has been no showing that the defendant was deprived of a fair trial because of prejudicial newspaper publicity." pp. 529-530. (Emphasis added.)

No objection to the procedure followed by the trial court has been raised by either party although the polling of the jury during trial was contrary to our holdings in *State v. Smith,* 215 Kan. 34, 523 P.2d 691 (1974), and *State v. Potts,* 205 Kan. 42, 468 P.2d 74 (1970). It is quite possible that the actual polling of the jury may have aroused the curiosity of the other jurors and created further prejudice to the defendant. It also must be remembered that in defendant's first trial the jury could not agree as to a verdict and allegedly stood eleven to one for acquittal. The fact that only one juror in the present case actually read and was affected by the statements in the newspaper article does not justify an assumption that this one juror's judgment is insignificant. The nature of the prior crimes revealed in the article also compound the possibility for prejudice to the defendant's rights. The prior crimes of grand larceny, first-degree robbery and armed robbery are all similar in nature to the counts of aggravated robbery charged in this case and would tend to have a greater impact upon a juror than knowledge of totally different prior crimes.

Juror Banks, who read the article, specifically stated that the prior charges and convictions "bothered" him and might affect his judgment. It is also important to note that without prompting by court or counsel as to the legal issue, this juror voluntarily responded that the prior convictions were what bothered him.

When the court asked him what he thought he read, Mr. Banks naturally and spontaneously zeroed in on the exact legal problem then confronting the court in chambers. As stated in *Murphy,* the juror's later assurances that he is equal to the task, that he can lay aside his stated impressions or notions and render a verdict based solely on the evidence presented in court cannot be dispositive of the defendant's rights.

Based upon the facts in this case we find that the court was in error in not granting the defendant's motion for a mistrial. The judgment is reversed and the case remanded for a new trial.

McFARLAND, J., dissenting in part: I dissent from the portion of the majority opinion reversing the conviction by virtue of the newspaper article read by a juror.

The juror was thoroughly questioned by the court as well as defense counsel as to the impact of the newspaper article. The trial court saw and heard the juror and concluded the juror was not tainted and a mistrial was not warranted. The majority herein, relying solely on a cold record, finds error in such determination.

Although not commented upon in the majority opinion, defense counsel, during the hearing relative to the jurors, revealed it was his trial strategy to introduce evidence the defendant was on parole at the time the crimes were committed. Such evidence was in fact introduced by the defendant and such introduction was in no way related to the juror's reading of the article. Any person of ordinary intelligence and experience knows that an individual on parole has committed a crime. So, with or without the article, the jury was free to speculate on what crime or crimes the defendant might have been previously convicted. Additionally, the newspaper article convictions were rather old—1962 and 1968. Their age is certainly less prejudicial to defendant than crimes of more recent vintage. The jury could infer defendant had learned his lesson and thereby give credence to defendant's contention he was attempting to prevent the crimes.

Under the unique circumstances herein, I would conclude the trial court did not err in refusing to grant a mistrial or new trial. I would affirm the conviction.