(6 P.3d 938)

No. 82,520

STATE OF KANSAS, *Appellee*, v. ELDON E. KEE, JR., a/k/a JUNIOR KEE, *Appellant.*

Opinion filed June 23, 2000.

*Edward W. Dosh*, of Law Offices of Edward Dosh, of Parsons, for appellant.

*Kyle G. Smith*, assistant attorney general, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., GERNON, J., and JACK A. MURPHY, District Judge, assigned.

BRAZIL, C.J.: Eldon E. Kee, Jr., appeals his jury convictions of two counts of sale of marijuana and one count of use of a communications facility to facilitate the felony of sale of marijuana. He alleges numerous trial errors on appeal.

Finding no reversible error, we affirm.

The charges against Kee stemmed from three controlled marijuana buys that occurred on Kee Farms, Inc., (Kee Farms), a farming operation located in Woodson County, Kansas. Kee was the president of Kee Farms and managed the day-to-day operations of the business. On October 6, 1994, Jimmy Munger, an associate of Kee, informed Neosho County Sheriff Rick Wingate that he would provide information regarding a marijuana distribution operation run by Kee in exchange for leniency on two drug charges recently filed against Munger. A meeting was subsequently arranged with the Kansas Bureau of Investigations (KBI) and the United States Attorney. At the meeting, Munger agreed to buy marijuana from Kee under the surveillance of the sheriff's department and the KBI. He took part in three controlled buys on November 3, 9, and 18, 1994.

The jury found Kee guilty of two counts of sale of marijuana for transactions occurring on November 3 and 9, and guilty of one count of unlawful use of a communication facility in causing or facilitating the commission of the felony of sale of marijuana on November 3. Kee was acquitted of one count of sale of marijuana on November 18 and two counts of use of a communication facility on November 9 and 18.

## Voir Dire

During voir dire, the trial court asked two married couples on the venire panel to determine which spouse would be excused. Defense counsel objected on grounds the trial court's decision violated the random selection process. The trial court overruled the objection, noting one couple had their child with them and, since 90 people remained in the jury pool, the parties were not precluded from being able to select a fair jury.

The trial court also excused several potential jurors who indicated they could not be fair and impartial because they knew Kee

or had obtained outside information regarding the case. One potential juror indicated he heard talk in a coffee shop and had formed a strong opinion that prevented him from being fair and impartial. The State asked another juror if he had formed any "preconceived ideas from the coffee shop, newspaper, or radio." The juror indicated he was in the same social circle as Kee, was a business competitor, had heard "things," and could not give Kee a "fair shake." The trial court asked if he was unable to be impartial because he was Kee's competitor or because he had heard information about the case. The juror replied, "[s]ome of both." Defense counsel moved for a mistrial on grounds the statements made by the potential jurors tainted the jury pool, making it impossible for Kee to receive a fair trial. The trial court denied the motion.

On appeal, Kee argues the trial court's decision to allow married couples to determine which spouse would be excused from the jury pool was in error and prejudicial. He also argues the trial court erred in denying his motion for a mistrial because the jurors heard prejudicial statements from potential jurors.

Whether a prospective juror is qualified to sit in the case is a matter within the discretion of the trial court during the voir dire examination, and the trial court's determination will not be overturned unless an abuse of discretion appears. A trial court's rulings are generally not reversible error unless prejudicial. See *State v. Aikins*, 261 Kan. 346, 365, 932 P.2d 408 (1997); *In re Estate of Minney*, 216 Kan. 178, 184, 531 P.2d 52 (1975). The failure to grant a mistrial will not constitute reversible error unless an abuse of discretion is shown. See *State v. Zamora*, 263 Kan. 340, 349, 949 P.2d 621 (1997).

Kee does not explain how the trial court abused its discretion in allowing married couples to determine which spouse would be excused from the venire panel or how the trial court's decision was prejudicial. The trial court adequately explained its decision, and Kee was not prejudiced.

Kee's claim that statements made by potential jurors during voir dire denied him a fair trial is also without merit. The trial court merely excused members who indicated they could not be impartial because they knew Kee or had outside knowledge of the case.

The potential jurors did not reveal details of the outside information or indicate whether they were unable to be impartial to Kee or the State. Although one juror stated he could not give Kee "a fair shake," he indicated he could not do so in part because he was a business competitor. He did not provide any details or other information regarding Kee or the case.

Kee argues *State v. Yurk*, 230 Kan. 516, 638 P.2d 921 (1982), is analogous to this situation and stands for the proposition that prolonged questioning of suspect jurors is prejudicial. We disagree.

Unlike *Yurk*, the potential jurors here were not subjected to prolonged questioning by the attorneys or the trial court. The trial court told the potential jurors during voir dire that it was important to set aside any information they had obtained about the case and be able to make a decision based on the evidence presented. The trial court also instructed the jury that its verdict was to be founded entirely upon the evidence admitted at trial.

The trial court did not err in excusing potential jurors or in denying Kee's motion for a new trial.

### Motion to Suppress

On October 27, 1994, Munger took Wingate to several locations on Kee Farms. Wingate discovered marijuana plants growing in one field and discarded marijuana plants in another. He found marijuana plants suspended from the ceiling in one barn, marijuana plants drying on bedsprings in another barn, and "processed" marijuana in plastic bags in a Quonset hut. Wingate took photographs and samples of the marijuana.

Prior to trial, Kee filed a motion to suppress all of the State's evidence in the case as fruit of an illegal search conducted by Wingate on October 27, 1994. He alleged the authorities would not have conducted the controlled buys without the evidence obtained by Wingate during the search.

Following a hearing, the trial court denied the motion. It noted the search was problematic; however, it concluded the controlled buys would have occurred regardless of the search since the investigation of Kee began before the search. The court also noted

the evidence indicated Munger had property rights to the land searched and properly brought Wingate onto the land.

When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination. *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995).

When a motion to suppress is denied, the moving party must object to the evidence at trial to preserve the issue on appeal. *State v. Cellier*, 263 Kan. 54, Syl. ¶ 2, 948 P.2d 616 (1997). Kee failed to object to the introduction of the evidence at trial. This issue, therefore, is not properly preserved on appeal.

Moreover, Wingate testified at the hearing on the motion to suppress that Munger met with the KBI and the United States Attorney and agreed to participate in controlled buys before October 27. Wingate stated the investigation would have proceeded if he had not gone to Kee's property on October 27. Wingate's testimony was unrefuted. Although the evidence obtained by Wingate on October 27 confirmed Munger's allegations, no evidence was presented at the hearing on the motion to suppress to indicate the fruits of the search affected the KBI's decision to proceed with the controlled buys. Further, the evidence discovered on October 27 was not evidence of the crimes charged and was not introduced by the State to prove Kee committed the charged offenses.

The trial court did not err in denying Kee's motion to suppress.

## Cross-Examination

Kee next argues the trial court committed reversible error in restricting his cross-examination of Munger and limiting the admissibility of evidence to attack Munger's credibility. Kee's discussion of this issue, although lengthy, is hard to follow and difficult to comprehend. He appears to allege the trial court refused to allow him to cross-examine Munger and excluded evidence relating to the following: (1) Munger's financial status; (2) Munger's animosity towards Kee because Kee failed to bail him out of jail; (3) his prior drug arrests and convictions; (3) Munger's prior drug use;

(4) compensation Munger received from the State; (5) Munger's financial debt to Kee; and (6) Munger had previously led officials on a "wild goose chase." Kee contends the trial court prevented him from challenging Munger's credibility in violation of his Sixth Amendment right to confrontation.

Kee provides no citations to the record to support his argument the trial court excluded evidence and restricted his cross-examination of Munger. Factual allegations made without being keyed to the record on appeal are presumed to be without support in the record. Supreme Court Rule 6.02(d) (1999 Kan. Ct. R. Annot. 33); *In re Care & Treatment of Hay*, 263 Kan. 822, 841-42, 953 P.2d 666 (1998).

Kee's assertions are in fact unsupported by the record. Kee was not limited by the trial court in his cross-examination of Munger, and the trial court did not prevent the admission of evidence as Kee suggests. Rather, the record shows the evidence Kee claims was excluded was presented to the jury and at no time did the trial court restrict defense counsel in his cross-examination of Munger. The record indicates the points Kee contends were excluded were addressed by the State and defense counsel during the examination of Munger.

Kee does provide a citation to the record to support his claim the trial court excluded evidence of Munger's prior convictions. During cross-examination by defense counsel, a KBI agent acknowledged Munger had a prior arrest. The State objected and requested a conference outside the presence of the jury to discuss the admissibility of Munger's prior drug convictions. The trial court ruled Munger's prior drug convictions were inadmissible to impeach his credibility but stated Kee could address the charges that led Munger to cooperate with authorities. Subsequently, defense counsel asked Munger on cross-examination if he had ever been arrested for cocaine possession. The State objected and a bench conference was held off the record. The question was not asked again.

Kee contends Munger's prior drug convictions were admissible to impeach Munger's credibility. His contention is without merit. Drug offenses are not crimes involving dishonesty and are not ad-

missible for the purpose of impeaching the credibility of a witness. *State v. Hall*, 246 Kan. 728, 744, 793 P.2d 737 (1990).

Kee also states in his brief the trial court erred in denying his pretrial motion in limine and allowing Munger to testify as to Kee's background in dealing drugs with Munger and others. Kee fails to explain how the trial court's ruling was in error or prejudiced his case. Points incidentally raised but not briefed are deemed abandoned. See *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999).

## Rebuttal

After the defense rested, the State moved to admit evidence relating to the marijuana discovered by Wingate on October 27, 1994. The State conceded the search was illegal, but argued the evidence was proper rebuttal evidence since Kee testified he had never cultivated or sold marijuana on his property. The State requested that it be allowed to present the testimony of Wingate and the photographs of marijuana plants. The trial court ruled the State could use the evidence to impeach Kee's credibility.

Defense counsel subsequently requested the State to designate its rebuttal witnesses. The record indicates an off-the-record discussion was held. The State then called Carolyn McGowan, Ralph Ulrich, and Wingate, respectively. McGowan, Kee's girlfriend and business partner, was called to produce records and information regarding certain property she had purchased. Ulrich testified he assisted Munger in the spring and summer of 1994 in growing marijuana on Kee Farms. He stated Munger had told him to contact Kee to discuss continued planting if anything should happen to Munger. Wingate testified as to the marijuana he discovered in the fields, the two barns, and the Quonset hut. He identified several photographs that he took of the marijuana plants in the fields, barns, and Quonset hut.

Kee argues the trial court erred in allowing the State to introduce the rebuttal evidence. He contends the evidence was cumulative and did not refute evidence presented by the defense, and its probative value was outweighed by its prejudicial effect.

At the beginning of the State's direct examination of Wingate, defense counsel entered a continuing objection to the admission

of Wingate's testimony and the photographs on grounds the evidence was the fruit of an illegal search. The record, however, does not indicate defense counsel objected that the witness' testimony or the other evidence was improper rebuttal evidence. An issue not presented to the trial court will not be considered for the first time on appeal. *State v. Ninci*, 262 Kan. 21, 42, 936 P.2d 1364 (1997).

Moreover, Kee testified he had never grown, processed, or sold marijuana on Kee Farms. The evidence admitted to show Kee was involved in growing marijuana on Kee Farms was proper rebuttal evidence that directly refuted Kee's testimony. See *State v. Allison*, 259 Kan. 25, 36, 910 P.2d 817 (1996). Kee also argues the trial court erred in admitting the evidence introduced through Wingate since it was the fruit of an illegal search. Even assuming the search was unreasonable under the Fourth Amendment, the impeachment exception to the exclusionary rule permits the prosecution to introduce illegally obtained evidence to impeach the defendant's own testimony. *James v. Illinois*, 493 U.S. 307, 309, 107 L. Ed. 2d 676, 110 S. Ct. 648 (1990). Kee's claim on this point fails.

## Sufficiency of Evidence

Kee next argues that because law enforcement officials did not observe Munger exchange money for marijuana, and because Munger's testimony was not credible, this court should conclude his convictions are unsupported by the evidence.

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

Munger testified he and Kee arranged the November 3 buy during a taped telephone conversation that was played for the jury. Authorities testified Munger was provided $1,000 and his vehicle was searched before the November 3 and 9 meetings. Munger testified he gave Kee the money in exchange for the marijuana. After the meetings, the vehicle contained 1 pound of marijuana

and no money. The jury viewed photographs and video and audio tape recordings of the November 3 and 9 meetings.

Sufficient evidence was presented at trial for a reasonable fact-finder to conclude Kee was guilty of the offenses beyond a reasonable doubt. It was the function of the jury to determine the weight and credit to be given the evidence and the testimony of Munger. On review, this court will not pass on the credibility of witnesses and all questions of credibility must be resolved in favor of the State. See *State v. Kuykendall*, 264 Kan. 647, 651, 957 P.2d 1112 (1998). Kee's sufficiency of the evidence challenge fails.

### Multiplicitous Counts

During the instruction conference, Kee argued the three counts of unlawful use of a communication facility in causing or facilitating the commission of the felony of sale of marijuana were multiplicitous and requested the trial court to dismiss the three charges. The trial court denied the request.

Kee argues his convictions of sale of marijuana on November 3, 1994, and use of a communication facility to facilitate the sale are multiplicitous because the same act of selling marijuana was required to prove both offenses.

A defendant may be prosecuted for more than one crime arising from the same conduct but convicting a defendant of multiplicitous crimes is prohibited by K.S.A. 21-3107.

The Kansas appellate courts have recognized several distinct approaches to analyzing multiplicity claims. See *State v. Mincey*, 265 Kan. 257, 260-65, 963 P.2d 403 (1998); *State v. Taylor*, 25 Kan. App. 2d 407, 410, 965 P.2d 834, *rev. denied* 265 Kan. 889 (1998). Multiplicity creates the potential for multiple punishments for the same offense in violation of the double jeopardy clause. See *State v. Mincey*, 265 Kan. at 260. For double jeopardy purposes, the traditional analysis employed in numerous Kansas cases, and relied upon by the parties in this case, provides: " 'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied when determining whether there are two offenses or only a single offense is whether each statutory provision requires proof of an element that the other does not.' " *State*

*v. Gonzales*, 245 Kan. 691, 702, 783 P.2d 1239 (1989) (quoting *State v. Dunn*, 243 Kan. 414, 432, 758 P.2d 718 [1988]).

Kee was convicted of use of a communication facility in facilitating the felony of sale of marijuana, in violation of K.S.A. 1999 Supp. 65-4141, and the underlying felony of sale of marijuana in violation of K.S.A. 1999 Supp. 65-4163(a)(3).

K.S.A. 1999 Supp. 65-4141 provides:

"(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person knowingly or intentionally to use any communication facility: (1) In committing or in causing or facilitating the commission of any felony under . . . K.S.A. 1999 Supp. 65-4160 through 65-4164 and amendments thereto."

In prosecuting Kee under K.S.A. 1994 Supp. 65-4141, the State was required to prove the underlying felony of sale of marijuana. See *State v. Hill*, 252 Kan. 637, 645, 847 P.2d 1267 (1993); *State v. Garrison*, 252 Kan. 929, 935-36, 850 P.2d 244 (1993). Under the test set forth above, the offenses are multiplicitous because the sale of marijuana offense does not contain a statutory element that is not found in the offense charged under K.S.A. 1994 Supp. 65-4141.

The Supreme Court, however, has recognized that the Double Jeopardy Clause, which affords the same protections contained in § 10 of the Kansas Constitution Bill of Rights, *Mincey*, 265 Kan. at 260, does no more than prevent the sentencing court from imposing greater punishment than the legislature intended. See *Gonzales*, 245 Kan. at 704 (quoting *Missouri v. Hunter*, 459 U.S. 359, 74 L. Ed. 2d 535, 103 S. Ct. 673 [1983]); *State v. Ninci*, 262 Kan. at 55-57 (quoting *State v. Holt*, 260 Kan. 33, 44-45, 917 P.2d 1332 [1996]). If the legislature intended to allow separate punishment for convictions under two criminal statutes that proscribe the same conduct, the trial court is not precluded from imposing, in a single trial, multiple punishments pursuant to the statutes. It must be determined, therefore, whether the Kansas Legislature intended to allow conviction and punishment for both offenses. *Gonzales*, 245 Kan. at 704.

In *State v. Taylor*, this court held a defendant may be convicted of both aggravated assault and criminal discharge of a firearm at

an occupied building where some persons in a building are in immediate apprehension of bodily harm because of shots fired at the building. 25 Kan. App. 2d at 422. To support its rulings, the court discussed several cases from other jurisdictions that had reviewed similar statutes enacted in response to the problem of drive-by shootings. 25 Kan. App. 2d 416-19. The court discussed *People v. Rivera*, 216 Mich. App. 648, 650-51, 550 N.W.2d 593 (1996), *lv. to appeal denied* 454 Mich. 861 (1997), in which the Michigan court considered whether convictions of assault with intent to commit murder and discharge of a firearm from a vehicle with intent to commit harm violated constitutional protections against double jeopardy.

"The [*Rivera*] court stated that the purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant's interest in not enduring more punishment than was intended by the legislature. To determine legislative intent the court considered whether each statute prohibits conduct violative of a social norm distinct from that protected by the other, *the amount of punishment authorized by each statute*, whether the statutes are hierarchical or cumulative, and the elements of each offense." 25 Kan. App. 2d at 417. (Emphasis added.)

The *Rivera* court looked to principles for determining legislative intent as set forth by the Michigan Supreme Court in *People v. Robideau*, 419 Mich. 458, 355 N.W. 2d 592 (1984). The *Robideau* court was faced with determining whether the legislature intended the compound crime of first-degree criminal sexual assault (penetration under circumstances involving any "other felony") to be distinct from the predicate "other felony" crimes of armed robbery or kidnapping. In setting forth a nonexclusive list of factors to consider in determining legislative intent, the court stated:

"Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions." 355 N.W. 2d at 487-88.

Sale of marijuana in violation of K.S.A. 1999 Supp. 65-4163(a)(3) is a drug severity level 3 felony. K.S.A. 1999 Supp. 65-4141 incor-

porates the elements of the sale of marijuana offense and provides that a person violating the statute is guilty of a nondrug severity level 8, nonperson felony, a lesser punishment. The use of a communication facility makes the commission of the underlying drug offense easier or less difficult. See *Hill*, 252 Kan. at 643-45. Because the communication facility offense incorporates all of the elements of the underlying felony and provides a lesser penalty than the underlying felony offense, it is clear that the legislature intended to enhance the sentence of a defendant who uses a communication facility to make the commission of the underlying drug offense easier. The legislature intended that a conviction of each offense be punished separately. Kee's convictions do not violate the double jeopardy protection against multiple punishments.

### The Equal Protection Clause

In his final argument, Kee asserts K.S.A. 21-4721(e) is unconstitutional on equal protection grounds. He asserts the statute provides disparate treatment because defendants who do not receive an upward departure sentence are precluded from appealing their sentence.

Kee's claim is clearly without merit. He was sentenced under 1994 Supp. K.S.A. 21-4721(e), and could properly appeal on grounds his sentence resulted from partiality, prejudice, oppression or corrupt motive. See *State v. Flores*, 268 Kan. 657, 658, 999 P.2d 919 (2000); *State v. Windom*, 23 Kan. App. 2d 429, 430-31, 932 P.2d 1019, *rev. denied* 262 Kan. 969 (1997).

Even under the current statute, defendants are not treated differently. An appellate court may review a departure sentence that results from partiality, prejudice, oppression or corrupt motive. However, an appellate court does not have jurisdiction to review a defendant's presumptive sentence, regardless of whether the trial court departed. See *Flores*, 268 Kan 657, Syl. ¶ 3.

Affirmed.