(965 P.2d 834)

No. 77,159

STATE OF KANSAS, *Appellee*, v. TOURENO D. TAYLOR, *Appellant*.

Opinion filed August 21, 1998.

*Stephen B. Chapman*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Debra S. Peterson*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., LEWIS, J., and ROBERT J. SCHMISSEUR, District Judge, assigned.

SCHMISSEUR, J.: Toureno D. Taylor appeals his jury trial convictions for two counts of aggravated assault and one count of criminal discharge of a firearm at an occupied building. We affirm.

On appeal, Taylor contends the count of criminal discharge of a firearm at an occupied building is multiplicitous with the two counts of aggravated assault or is contrary to the legislative intent behind the drive-by shooting statute. He further contends the State failed to produce evidence sufficient to sustain the convictions.

Given the standard of review when the sufficiency of the evidence is challenged in a criminal case, the facts are summarized in the light most favorable to the prosecution. *State v. Abel*, 261 Kan. 331, 337, 932 P.2d 952 (1997).

Taylor had gone to Hope Taylor's home and demanded to talk to Hope's sister, Lelee. Taylor had battered Lelee earlier that day, and she refused to talk to him. Hope ordered Taylor to leave her home which he did, but according to Lelee and her friend, Vernon Dupree, Taylor returned a short time later accompanied by another man. Taylor asked Lelee to come out because he had something to show her.

The yard was well lit with a porch light and a spotlight. Lelee looked out the window and warned Dupree to keep the door closed because Taylor and his friend appeared to be carrying ball bats. When she saw Taylor raise what she had assumed to be a ball bat to his shoulder, she told Dupree that Taylor and the other man had guns.

Dupree and Lelee then heard the sound of repeated gunfire. Gunshots were fired through the windows and the walls of the house. Dupree stooped on his knees to avoid injury from the gunfire. Lelee ran into her infant nephew's bedroom and fell on top of the child to protect him. Debris fell on Lelee as the bullets tore into the walls surrounding the child's bed.

Someone in the neighborhood called the police. The police dispatcher recorded the call to the police at 1:09 a.m. The police found evidence of shotgun blasts on the side of the house and bullet holes in the house. There were shotgun shell casings and wadding in the front yard and bullet holes in the bedroom walls and ceiling.

At approximately 1:10 a.m, 2 miles away from the shooting, Taylor was stopped for a traffic infraction. The officer arrested Taylor and his passenger. No weapons were found in the search of Taylor and his passenger, or in the inventory search of the car.

Taylor's testimony differed regarding the events that occurred after Hope ordered him from her house. Taylor testified he left and went to his own apartment for a short time. He said he did not return to Hope's house. Taylor was upset and decided to go to a friend's house. There was snow on the streets, and he lost control

of the car. He was stopped by a police officer and subsequently arrested.

Taylor contends his conviction for criminal discharge of a firearm at an occupied building is multiplicitous with the aggravated assault convictions. In support, he argues that criminal discharge of a firearm at an occupied building is an included crime of aggravated assault under the facts of this case or, in the alternative, aggravated assault is a lesser included crime of criminal discharge of a firearm at an occupied building.

Taylor did not argue to the trial court that the convictions were multiplicitous. "When constitutional grounds are asserted for the first time on appeal, they are not properly before the appellate court for review. [Citation omitted.]" *State v. Steadman*, 253 Kan. 297, 306, 855 P.2d 919 (1993), see *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984). There are, however, three exceptions to the general rule:

> " '(1) Cases where the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case;
>
> " '(2) Questions raised for the first time on appeal if consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights; and
>
> " '(3) That a judgment of a trial court may be upheld on appeal even though that court may have relied on the wrong ground or assigned a wrong reason for its decision.' [Citation omitted.]" *State v. Bell*, 258 Kan. 123, 126, 899 P.2d 1000 (1995) (quoting *Pierce v. Board of County Commissioners*, 200 Kan. 74, Syl. ¶ 3, 434 P.2d 858 [1967]).

The first two exceptions arguably apply in this case. In *Dubish*, the Kansas Supreme Court faced an issue of multiplicity raised for the first time on appeal. The court noted the second exception listed above and addressed the issue on the merits, reasoning:

> "The issue of multiplicity was considered in *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978). The court stated the principal danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense. 224 Kan. at 154-55. The fundamental right of a defendant to a fair trial under the 5th and 14th Amendments to the Constitution of the United States would be violated by a multiplicitous conviction." 234 Kan. at 718.

Therefore, we will consider the merits of Taylor's multiplicity argument.

Taylor relies on *State v. Warren*, 252 Kan. 169, 843 P.2d 224 (1992), to support his argument that where the same wrongful act supports more than one conviction, the convictions are multiplicitous.

Convicting a defendant of multiplicitous crimes is prohibited by K.S.A. 21-3107:

"(1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(a) A lesser degree of the same crime;

(b) an attempt to commit the crime charged;

(c) an attempt to commit a lesser degree of the crime charged; or

(d) a crime necessarily proved if the crime charged were proved."

Case law analysis of multiplicity claims reveals several distinct approaches. "A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution." *State v. Garnes*, 229 Kan. 368, 373, 624 P.2d 448 (1981). " 'Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other.' " *State v. Baker*, 255 Kan. 680, 683, 877 P.2d 946 (1994) (quoting *State v. Grissom*, 251 Kan. 851, Syl. ¶ 12, 840 P.2d 1142 [1992]). Offenses are not multiplicitous if they occur at different times and/or in different places. *State v. Howard*, 243 Kan. 699, 703, 763 P.2d 607 (1988).

A number of multiplicity cases have turned to *State v. Fike*, 243 Kan. 365, 368, 757 P.2d 724 (1988), which sets out a two-pronged test for determining if there is an included crime under K.S.A. 21-3107(2)(d). Under the first prong, one determines if all of the statutory elements of one crime are included in the other. Even if there is no included crime proven under the first prong, there may still be an included crime under the second prong. Under the second prong, the court reviews the allegations of the complaint and

the evidence adduced at trial, and if the evidence which must be adduced at trial for the purpose of proving the crime charged would also necessarily prove another crime, then the latter is an included crime. The Supreme Court has given the second prong of *Fike* a narrow interpretation by emphasizing the distinction between what the State proves at trial and what the State is required to prove.

In *State v. Gibson*, 246 Kan. 298, 787 P.2d 1176 (1990), the defendant contended that aggravated sexual battery was a lesser included offense of rape under the facts of the case. The *Gibson* court stated:

"Defendant recognizes that the statutory elements are different in that aggravated sexual battery requires proof of a nonspousal relationship and proof of an intentional application of force with the intent to arouse or satisfy the sexual desires of the offender or another, neither of which are required to prove rape. However, defendant contends that under [the second prong of *Fike*], the instruction was required because the State did prove an intentional application of force with the intent to arouse upon proving the act of sexual intercourse and also proved a nonspousal relationship.

. . . .

"Defendant's reliance on *Fike* is misplaced. He has confused what the State may have actually proved in its evidence establishing that a rape occurred with what the State was required to prove to establish the crime charged. The mere fact that the evidence adduced in proving the crime charged may also prove some other crime does not make the other crime a lesser included offense under K.S.A. 21-3107(2)(d). Neither the factual allegations of the rape charge nor the evidence the State was required to adduce at trial includes an intent to arouse or a nonspousal relationship. Defendant fails to distinguish between what the State may prove and what the State must prove at trial." 246 Kan. at 299-300.

The principle explained above in *Gibson* was important in *State v. Mason*, 250 Kan. 393, 827 P.2d 748 (1992), where the court faced another multiplicity argument. In *Mason*, the defendant attacked an elderly woman in her home. He dragged her from the kitchen into the bedroom. He held her to the floor and tried to remove her dress, but she resisted and told him he would never get the dress off. He exposed his penis and attempted to force the woman to perform oral sodomy upon him, but she continued to resist and refused to comply. In the middle of the attack, he suddenly got up and ran out of the house. A few moments later, the

woman's son arrived and found his mother on the floor. The defendant was convicted of aggravated kidnapping, attempted rape, attempted aggravated sodomy, and aggravated sexual battery. He asserted the aggravated sexual battery conviction was multiplicitous with the other three convictions. In analyzing the defendant's claim, the *Mason* court quoted *State v. Lassley*, 218 Kan. 758, 761, 545 P.2d 383 (1976):

" 'In *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1976), we stressed that duplicity [multiplicity] does not depend on whether the facts proved at trial are actually used to support the conviction of both offenses; rather, it turns on whether the necessary elements of proof of the one crime are included in the other.' " 250 Kan. at 399.

The *Mason* court then quoted *Gibson* regarding the distinction under the second prong of *Fike* between what the State may have proved and what the State was required to prove in establishing one of the crimes. *Mason*, 250 Kan. at 400-01. Even though the same act of force (holding the woman to the floor) was the act of force used to commit the attempted rape, the attempted sodomy, and the sexual battery, the court concluded the crimes were not multiplicitous. Although arguably the evidence produced at trial to prove the aggravated kidnapping, attempted aggravated sodomy, and attempted rape would incidentally have proven the aggravated sexual battery, the court noted that two elements of the aggravated sexual battery—the victim was not the aggressor's spouse and the act was done to arouse or satisfy the sexual desires of the offender or another—were not necessary to prove the other three crimes, and the crimes were, therefore, not multiplicitous. 250 Kan. at 401.

In 1992, the Kansas Supreme Court decided *Warren*, 252 Kan. 169, the case Taylor relies on to support his multiplicity argument, and altered the test for multiplicity. The *Warren* court held that aggravated robbery and aggravated battery convictions are multiplicitous if the same act of violence provides the basis for each conviction and the same evidence is used to prove both convictions. 252 Kan. at 182. This holding was reaffirmed in *State v. Rinck*, 256 Kan. 848, 850-51, 888 P.2d 845 (1995).

In *Warren*, an elderly woman was pushed to the ground and her purse stolen. She sustained serious injuries from the fall. In ad-

dressing the defendant's arguments that his convictions for aiding and abetting aggravated battery and aiding and abetting aggravated robbery were multiplicitous, the court discussed K.S.A. 21-3107 and the holding of *Fike*. 252 Kan. at 176.

Although aggravated robbery and aggravated battery each require proof of an element not present in the other crime, the *Warren* court noted that the evidence showed that the victim had suffered great bodily harm. The court stated, "[I]t is clear that the necessary elements of proof for aggravated robbery also established the necessary elements of proof for aggravated battery." 252 Kan. at 180. The court held that aggravated battery can be a lesser included offense of aggravated robbery under the second prong of *Fike*.

The court then went on to analyze the charges using the traditional multiplicity test, under which charges stemming from a single wrongful act may not be multiplicitous if each of the charges requires proof of a fact not required in proving the other. The court held that although each charge required proof of a fact not required in proving the other, the crimes were nevertheless multiplicitous because the same act of violence provided the basis for each conviction. 252 Kan. at 181-82. The court explained:

> "If the charges in this case are not multiplicitous because one charge involves proof of a fact not required in proving the other, then it leads to the conclusion that only crimes involving identical elements can be multiplicitous. This cannot be the case because this court has found crimes involving different elements multiplicitous. See, *e.g., State v. Smith*, 245 Kan. 381, 392, 781 P.2d 666 (1989) (aggravated battery and attempted first-degree murder multiplicitous); *State v. Cathey*, 241 Kan. 715, 719-20, 741 P.2d 738 (1987) (same); *Garnes*, 229 Kan. at 373-74 (same). Why were these convictions not multiplicitous? Crimes involving different elements, if taken literally, necessarily will require proof of a fact not required in proving the other.

> "We are satisfied, and so hold, that aggravated robbery and aggravated battery are multiplicitous if, as in the case here, the same act of violence provided the basis for each conviction. The defendant's conviction for aiding and abetting aggravated battery is reversed . . . ." *Warren*, 252 Kan. at 182.

A similar analysis was employed in *Rinck*, 256 Kan. 848. In that case, the defendant burglarized the residence of an elderly woman. During the course of the burglary, the defendant beat the woman

over the head with a flashlight, causing a gash which required 10 stitches. The court again acknowledged that aggravated battery and aggravated robbery each have an element not required by the other, but the court also noted the importance of the second prong of *Fike* when analyzing not only claims regarding lesser included crimes but multiplicity claims. The *Rinck* court reaffirmed the holding of *Warren*: "*Warren* holds that where the same act of violence provides the basis for a conviction for aggravated robbery and a conviction for aggravated battery, the convictions are multiplicitous. [Citation omitted.] [Rinck's] conviction for aggravated battery is, therefore, reversed." 256 Kan. at 851.

*Warren* and *Rinck* require asking, first, if the same act of violence was involved in each crime and, second, whether the evidence the State used to prove one crime also proved the other. If the answer to both questions is yes, the crimes are multiplicitous. The evidence in the instant case established that it was the same act of violence, discharging a firearm, that supported both the aggravated assault and the criminal discharge of a firearm at an occupied building convictions, and the same evidence was used to support both convictions. Therefore, following *Warren* and *Rinck* requires reversal of either the criminal discharge of a firearm at an occupied building conviction or the aggravated assault convictions.

However, in 1997, the test for multiplicity was revisited in *State v. Fritz*, 261 Kan. 294, 933 P.2d 126 (1997). The *Fritz* court returned to the traditional analysis developed under *Fike*, stating: "The test to determine whether the charges in a complaint or information are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous." 261 Kan. 294, Syl. ¶ 4. The court concluded that a conviction of fraud under the Loan Broker's Act (K.S.A. 50-1017) was not duplicitous with a conviction of theft by deception (K.S.A. 21-3701[a][2]).

Under *Gibson*, *Mason*, and *Fritz*, convictions based on a single wrongful act are not multiplicitous if each charge requires proof of a fact not required in proving the other. The complaint must be examined to determine whether each offense requires proof of an element not necessary to prove the other offense. If additional

proof is required to establish one of the convictions, the convictions are not multiplicitous.

The relevant portions of the complaint in the instant case follow:

"COUNT ONE . . . [O]n or about the 1st day of February, 1996, A.D., one TOURENO D. TAYLOR did then and there unlawfully, intentionally place another, to-wit: LeLee Taylor in reasonable apprehension of immediate bodily harm, done with a deadly weapon, to-wit: firearm. Contrary to K.S.A. 21-3410(a), Aggravated Assault, Severity level 7, Person Felony, Count One.

. . . .

"COUNT THREE . . . [O]n or about February 1, 1996, A.D., in the County of Sedgwick, and State of Kansas, one TOURENO D. TAYLOR did then and there unlawfully, maliciously, intentionally and without authority discharge a firearm at an occupied dwelling, building or structure, to-wit: residence at 1717 McFarland, Wichita, Sedgwick County, Kansas in which there is a human being, to-wit: Terrance L. Carter, Jr., 1 year of age, who was not placed in apprehension of bodily harm. . . . Contrary to K.S.A. 21-4219(b), Criminal Discharge Of A Firearm At An Occupied Building Or Occupied Vehicle, Severity Level 7, Person Felony, Count Three."

Count two of the complaint reads the same as count one except Vernon Dupree is named as the victim.

It cannot be said that to prove criminal discharge of a firearm at an occupied building, aggravated assault must be proved. Aggravated assault requires proof that the victims were placed in reasonable apprehension of harm, and such proof is not required to prove criminal discharge of a firearm at an occupied building. See K.S.A. 21-3410(a); K.S.A. 1997 Supp. 21-4219(b). Conversely, criminal discharge of a firearm at an occupied building requires the State to prove that the defendant discharged a firearm at an occupied building, while aggravated assault requires no such proof. Clearly, neither aggravated assault nor criminal discharge of a firearm at an occupied building is an included offense of the other, and under the traditional test, the convictions are not multiplicitous.

*Fritz* represents the most recent authority and reaffirms the traditional test for multiplicity established in *Gibson* and *Mason*. *Warren* and *Rinck* provide a method that is based on the actual conduct of the defendant and the actual evidence adduced at trial. Although both lines of cases are good law, the *Fritz, Gibson,* and *Mason* line

of cases yields a result that is consistent with the concept of included offenses: " 'One offense is necessarily included in another if it is impossible to commit the greater without also having committed the lesser.' " *State v. Berberich*, 248 Kan. 854, 858, 811 P.2d 1192 (1991). (quoting 3 Wright, Federal Practice and Procedure: Criminal 2d § 515 [1982]). Clearly, as the facts in the instant case illustrate, a defendant can commit criminal discharge of a firearm at an occupied building without committing aggravated assault, and the converse is true. Shooting into an occupied building is extremely high risk behavior, and one who engages in such conduct must be accountable to those who are unaware and, therefore, incapable of protecting themselves from the danger as well as those who are put in fear of bodily harm by the gunfire.

Taylor's arguments about proof of the child's state of mind are resolved in *State v. Alderson*, 260 Kan. 445, 459, 922 P.2d 435 (1997), in which the court held the State is not required to prove the victim was not placed in immediate apprehension of bodily harm as an element of criminal discharge of a firearm at an occupied building.

The authorities of other states enacting statutes in response to the problem of drive-by shootings provide insight into the issue and support the rulings herein.

In *People v. Banks*, 260 Ill. App. 3d 464, 472, 632 N.E.2d 257 (1994), the Illinois court considered whether the appellant's three convictions for aggravated discharge of a firearm should stand as separate convictions or be vacated as offenses carved from the same physical act which predicated convictions for aggravated battery with a firearm. The appellant had been found guilty of discharging his weapon into a crowd of unarmed people. It was determined that he had shot at least six bullets from his gun. Three of twelve people were injured from gunshot wounds. The appellant contended that only one physical act was committed against each victim, firing at the victim and hitting the victim in the body with the bullet. Therefore, the appellant argued, only the aggravated battery convictions could stand. The court affirmed both the aggravated battery with a firearm convictions and the aggravated discharge of a weapon convictions, finding that appellant's acts, which caused

injuries to the victims, constituted deeds distinct from his acts of firing in the direction of a crowd of unarmed people.

In *State v. Shook*, 293 N.C. 315, 320-21, 237 S.E.2d 843 (1977), the North Carolina Supreme Court held that the crimes of discharging a firearm into occupied property and assault with a deadly weapon were entirely separate and distinct offenses, and there was no reason the appellant could not be convicted and sentenced for both. To reach this conclusion, the court compared the elements of the two crimes and found that each offense required proof of an element the other did not.

In *People v. Rivera*, 216 Mich. App. 648, 650-51, 550 N.W.2d 593 (1996), *lv. to appeal denied* 454 Mich. 861 (1997), the Michigan court considered whether convictions of assault with intent to commit murder and discharge of a firearm from a vehicle with intent to commit harm violated constitutional protections against double jeopardy. The court stated that the purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant's interest in not enduring more punishment than was intended by the legislature. To determine legislative intent the court considered whether each statute prohibits conduct violative of a social norm distinct from that protected by the other, the amount of punishment authorized by each statute, whether the statutes are hierarchical or cumulative, and the elements of each offense. The court affirmed the convictions, finding that the social norms protected by the respective statutes differed markedly; the sentences for the two crimes were significantly different; the statutes were not hierarchical, being in separate chapters of the penal code; and the respective statutes involved different elements. Finding no legislative intent to the contrary, the court concluded that convictions for assault and intentional discharge of a firearm did not implicate double jeopardy concerns.

In *Rumph v. State of Florida*, 615 So. 2d 211 (Fla. Dist. App. 1993), in a summary opinion, the Florida court affirmed the appellant's convictions for aggravated assault and shooting into an occupied vehicle. The court noted that dual convictions for aggravated assault and shooting into an occupied vehicle are authorized by statute. Fla. Stat. § 775.021(4)(a) (1997) provides that whoever,

in the course of one criminal transaction, commits acts which constitute one or more separate criminal offenses shall be sentenced concurrently or consecutively upon conviction of those offenses. Offenses are separate if each offense requires proof of an element that the other does not without regard to the complaint or the proof adduced at trial. The statute provides that the intent of the legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode.

In *People v. Garcia*, 32 Cal. App. 4th 1756, 39 Cal. Rptr. 2d 73 (1995), the appellant was convicted of shooting a gun into a vehicle occupied by a driver and three passengers. He was also convicted of four assault charges relating to the driver and the three passengers. The trial court stayed the sentences resulting from the assaults on the three passengers; therefore, there was no issue regarding whether those sentences violated the prohibition against multiple sentences for the same act. At issue in *Garcia* was whether the appellant's sentences for one count of assault with a firearm and one count of shooting at an occupied vehicle could be sustained where the driver of a vehicle was the victim of both crimes.

The California penal code proscribes the imposition of more than one punishment for acts that violate multiple criminal statutes. The penal code prohibits multiple sentences, not multiple convictions, where the defendant harbors a single intent and commits a single act that violates multiple statutes. 32 Cal. App. 4th at 1780-81.

The California court noted a "multiple victim" exception to the proscription against multiple punishments. The multiple victim exception provides that even though a defendant entertains a single principal objective during an indivisible course of conduct, he or she may be convicted and punished for each crime of violence committed against each different victim. 32 Cal. App. 4th at 1781. The court held that the sentence for assault on the driver and the sentence for shooting at an occupied vehicle did not violate the prohibition against multiple punishments because, as to the driver, the appellant was sentenced only once (assault) and, as to the passengers in the vehicle, he was sentenced only once (shooting at an occupied vehicle). 32 Cal. App. 4th at 1785.

In *Locke v. State*, 943 P.2d 1090, 1094-95 (Okla. Crim. 1997), the Oklahoma court considered whether convictions for two counts of using a vehicle to facilitate the intentional discharge of a firearm (drive-by shooting) was double jeopardy. The appellant and approximately nine associates fired guns into a house occupied by seven people. One occupant of the house was killed and two were injured. The court found that although the State listed separate victims under each count of drive-by shooting, the elements necessary to prove the two counts were identical. Because the State did not have to prove different facts for each count, two counts of drive-by shooting were putting the defendant in double jeopardy.

Taylor further argues the Kansas Legislature expressed an intent indicating that the drive-by shooting statute should be applied in cases only where the defendant could not otherwise be charged with a felony. The important question is, therefore, whether the legislature intended to prohibit dual convictions of drive-by shooting and assault. We conclude it did not.

K.S.A. 21-4219 provides in relevant part:

"(b) Except as provided in K.S.A. 21-3411, and amendments thereto, criminal discharge of a firearm at an occupied building or occupied vehicle is the malicious, intentional and unauthorized discharge of a firearm at a dwelling . . . in which there is a human being who is not placed in immediate apprehension of bodily harm."

In *State v. Caldwell*, 21 Kan. App. 2d 466, 468, 901 P.2d 35, *rev. denied* 258 Kan. 859 (1995), this court addressed the issue of whether, under K.S.A. 21-4219(b), the State was required to prove that the victim had no apprehension of bodily harm. The defendant in *Caldwell* discharged a firearm at a house where three people were present. Two persons testified as to immediate apprehension of bodily harm when the shots were fired. The third person in the house was in the shower and unaware of the threat. She did not testify regarding her state of mind. The defendant was convicted of two counts of aggravated assault and one count of criminal discharge of a firearm at an occupied building. On appeal, the defendant argued that the State had failed to prove all the elements of criminal discharge of a firearm at an occupied building because

the third victim's state of mind regarding a lack of apprehension of bodily harm was not proved at trial.

In construing the statute in light of legislative intent, the *Caldwell* court held that it is clear the legislature intended that a person guilty of discharging a firearm at an occupied building be convicted of a felony whether or not the person or persons inside were put in immediate apprehension of bodily harm. The court went on to say that the legislature intended to prohibit stacking the offenses of aggravated assault and discharging a firearm at an occupied building where the offenses involve the same victim and the same criminal act. 21 Kan. App. 2d at 472.

The issue before this court is whether the legislature intended to prohibit stacking aggravated assault and discharging a firearm at an occupied building where the offenses involve the same criminal act but *different* victims.

When the Kansas Legislature considered the enactment of the drive-by shooting statute, it received testimony from various interested citizens expressing concern for the quality of life in Kansas neighborhoods where drive-by shootings are a pervasive threat. In addition, Nola Foulston, the Sedgwick County District Attorney, testified about the frustration of the State regarding the limited charging options where individuals have perpetrated drive-by shootings. Foulston outlined the existing criminal statutes and the State's burden of proof as to each crime. Clearly lacking was a statute that recognized that the malicious and willful act of shooting into a building is alone enough to warrant a felony punishment.

The subcommittee on drive-by shooting acknowledged these concerns in the Report of Subcommittee, House Judiciary Committee on Drive-by Shooting (H.B. 2709), February 25, 1992. Portions of the report are excerpted below:

"Presently, some gaps exist in the ability to fully prosecute some drive by shooting situations. We believe our work product fills these gaps without creating additional crimes simply to stack charges against the accused.

"New Section 1 (a) addresses the situation in which a drive-by shooting of an unoccupied dwelling does not rise to the level of a felony because less than $500. of property damages results. Subsection (a) simply makes the act of willful, malicious and unauthorized shooting at an unoccupied dwelling a class E felony, regardless of the amount of damage.

"New Section 1 (b) addresses the situation when aggravated assault and aggravated battery fails to cover the act. Malicious and willful shooting at an occupied building or vehicle, but where the individual is not placed in immediate apprehension of bodily harm, is a class D felony. This is the same class of felony as aggravated assault and will cover the situation where aggravated assault would fail. The willful and malicious shooting at an occupied building or vehicle which results in bodily injury is a class C felony. This is the same class felony as aggravated battery and will cover those situations where the requisite intent to injure, required for battery, cannot be shown.

"The subcommittee believes the creation of these three new felonies addresses the gaps in current law discussed by the conferees supporting H.B. 2709. . . ."

The subcommittee's objective was to fill the gaps in the law prohibiting the full prosecution of drive-by shootings. Of particular importance, then, is the recognition of where those gaps existed and where they did not.

In a situation where the defendant announced his presence and intent to harm to the occupants of the building prior to discharging gunfire into the building, and all those within the building heard and appreciated the danger, full prosecution of the crime was possible by charging aggravated assault as to each occupant who was not injured and aggravated battery as to each occupant who was injured in the gunfire. Where, however, the defendant discharged a firearm into an occupied building but no occupant was aware of the threat prior to the gunfire, no one was injured, and the property damage was negligible, the law as it existed prior to the enactment of the drive-by shooting statute limited the State to charging misdemeanor criminal damage to property, which was clearly insufficient as a punishment or as a deterrent. The drive-by shooting statute filled this gap in the law by establishing a felony statute prohibiting the wanton and willful act itself without regard to the state of mind of the shooter, the victims, or the amount of property damage.

The situation in the instant case reveals another gap in the law as it existed prior to the enactment of the drive-by shooting statute. In this case, two victims of the drive-by shooting were put in apprehension of bodily harm, and a third victim, due to his infancy, was unaware of the danger. No one suffered physical harm. Taylor argues that this court should interpret the legislature's intent to

prohibit a mixture of aggravated assault and drive-by shooting convictions arising out of a single criminal transaction. Such an interpretation would permit Taylor to escape responsibility for putting the child in danger, due only to the child's lack of apprehension. If the child had been of an age where he could have appreciated the danger, Taylor would have been answerable for aggravated assault as to the child. This recognition reveals that Taylor's suggested interpretation perpetuates the gap the legislature intended to fill.

The legislature crafted the drive-by shooting statute to parallel the aggravated assault and aggravated battery statutes in terms of punishment. Therefore, the drive-by shooting charge is clearly an alternative to aggravated assault or aggravated battery charges where the defendant's acts warrant felony treatment but the facts are not susceptible to the proof required by those statutes. Because the drive-by shooting charge is an alternative, rather than an additional charge, the defendant is not prejudiced by the State's election to pursue the drive-by shooting charge. Furthermore, permitting the mixture of drive-by shooting convictions and assault or battery convictions in the appropriate case realizes the legislative intent to avoid stacking the charges against the defendant and completely fills the gaps in the law, allowing for full prosecution of the crime.

The final issue is whether the evidence produced at trial is sufficient to sustain the convictions.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted]." *State v. Claiborne*, 262 Kan. 416, 425, 940 P.2d 27 (1997).

Taylor contends that no rational factfinder could have convicted him in light of the fact that the shooting was logged in by the police dispatcher at 1:09 a.m., and he was stopped for a traffic infraction 2 miles away from the shooting at 1:10 a.m.

Although Taylor was picked up 2 miles from the shooting scene at approximately the same time as the shooting was called in to the police dispatcher, it is not impossible that Taylor committed the crime. It is not known how much time lapsed between the shooting

and the telephone call to dispatch. The arresting officer testified that the distance between Hope's house and the place of Taylor's arrest could be covered in 1 minute if the driver were driving over the speed limit.

Viewing the evidence in the light most favorable to the State, the evidence is clearly sufficient to sustain the conviction.

Affirmed.