(143 P.3d 92)
No. 93,591

STATE OF KANSAS, *Appellee,* v. AARON G. GOMEZ, *Appellant.*

 Opinion
filed September 29, 2006.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., BUSER, J., and KNUDSON, S.J.

BUSER, J.: Aaron G. Gomez appeals his convictions for two counts of aggravated assault in violation of K.S.A. 21-3410(a), and two counts of criminal discharge of a firearm at an occupied vehicle in violation of K.S.A. 21-4219(b). We affirm in part, reverse in part, and remand for resentencing.

### Factual and Procedural Background

In the early morning hours of August 10, 2003, Gomez drove Jose Gauna to a prearranged fight with Justin Kutilek at a parking lot in Wichita, Kansas. Kutilek was seeing Gauna's ex-girlfriend, Julie Swiler. Kutilek drove to the fight with Swiler as a passenger, while Kutilek's roommate, Josh Morrison, arrived separately.

Swiler remained in the vehicle while Kutilek confronted Gauna. At some point during the altercation, Gomez drew a handgun, pointed it at Kutilek, and began running towards him. Kutilek, in fear of being shot, ran to his vehicle.

As Kutilek drove away, Gomez fired seven shots, striking the vehicle several times. A bullet grazed Kutilek's scalp, causing a wound which necessitated his hospitalization. Swiler was not struck, but she felt a bullet pass below her legs and heard another one strike the dash.

Gomez then approached Morrison, pointed the pistol at his face, and asked him if he wanted "any shit." Morrison, fearing he could be shot, backed up and said he did not "want any of this." Gomez returned to his own vehicle, and Morrison called the police.

On August 13, 2003, Gomez was charged with two counts of aggravated assault, in violation of K.S.A. 21-3410(a), and two counts of criminal discharge of a firearm at an occupied vehicle in violation of K.S.A. 21-4219(b). One count of aggravated assault alleged Gomez had placed Kutilek in reasonable apprehension of

immediate bodily harm with a deadly weapon, and the other count made the identical allegation with respect to Morrison. One count of criminal discharge of a firearm alleged Gomez had discharged a firearm at a motor vehicle "occupied at the time by a human being, to wit: Justin E. Kutilek, upon whom great bodily harm was thereby inflicted," and the other count alleged Gomez had discharged a firearm at a motor vehicle "occupied at the time by a human being, to-wit: Julie A. Swiler."

Following a trial, the jury returned guilty verdicts on both aggravated assault counts, a lesser-included criminal discharge of a firearm count based on Kutilek suffering bodily harm (not great bodily harm as the State had charged), and the criminal discharge of a firearm count related to Swiler. Gomez appeals.

### Multiplicity of the Criminal Discharge of a Firearm At an Occupied Vehicle Convictions

Gomez contends the two criminal discharge of a firearm at an occupied vehicle convictions are multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States and K.S.A. 21-3107(2). Gomez maintains K.S.A. 21-4219(b) proscribes "the act of discharging a firearm at a motor vehicle in which there is a human being. The fact that the vehicle is occupied by more than one person is immaterial."

The State responds by contending a separate crime is chargeable under K.S.A. 21-4219(b) for each person who occupies the vehicle:

"[Gomez'] reliance on multiplicity is misplaced. He was not charged with crimes under more than one statute arising from a single transaction. He was charged with one crime, criminal discharge of a firearm at an occupied vehicle, in multiple counts, because two separate people occupied the same vehicle. Different counts were specifically warranted in the instant case where the offense involving [Kutilek] resulted in bodily harm. [Gomez] cannot escape responsibility for his actions simply by arguing more than one individual was placed in danger as the result of the same criminal conduct."

Gomez did not raise the multiplicity issue below, but our appellate courts will consider multiplicity for the first time on appeal to serve the ends of justice or prevent denial of fundamental rights. *State v. Dubish*, 234 Kan. 708, 718, 675 P.2d 877 (1984); *State v.*

*Hankerson,* 34 Kan. App. 2d 629, 632, 122 P.3d 408 (2005); *State v. Taylor,* 25 Kan. App. 2d 407, 409-10, 965 P.2d 834, *rev. denied* 266 Kan. 1115 (1998); *State v. Thomas,* 24 Kan. App. 2d 734, 737, 953 P.2d 1043 (1998). "The fundamental right of a defendant to a fair trial under the 5th and 14th Amendments to the Constitution of the United States would be violated by a multiplicitous conviction." *Dubish,* 234 Kan. at 718. Finally, "the issue of whether convictions are multiplicitous is a question of law subject to unlimited review. [Citations omitted.]" *State v. Schoonover,* 281 Kan. 453, 461, 133 P.3d 48 (2006).

We begin our analysis by reviewing the statutory language and legislative history regarding the criminal discharge of a firearm statute. K.S.A. 2005 Supp. 21-4219 provides:

"(a) Criminal discharge of a firearm at an unoccupied dwelling is the malicious, intentional and unauthorized discharge of any firearm at an unoccupied building.

"Criminal discharge of a firearm at an unoccupied dwelling is a severity level 8, person felony.

"(b) Except as provided in K.S.A. 21-3411, and amendments thereto, criminal discharge of a firearm at an occupied building or occupied vehicle is the malicious, intentional and unauthorized discharge of a firearm at a dwelling, building, structure, motor vehicle, aircraft, watercraft, train, locomotive, railroad car, caboose, rail-mounted work equipment or rolling stock or other means of conveyance of persons or property in which there is a human being.

"Criminal discharge of a firearm at an occupied building or occupied vehicle is a severity level 7, person felony.

"Criminal discharge of a firearm at an occupied building or occupied vehicle which results in bodily harm to a person during the commission thereof is a severity level 5, person felony.

"Criminal discharge of a firearm at an occupied building or occupied vehicle which results in great bodily harm to a person during the commission thereof is a severity level 3, person felony."

This court discussed the history of K.S.A. 21-4219 in *Taylor.* That history revealed legislative testimony "from various interested citizens expressing concern for the quality of life . . . where drive-by shootings are a pervasive threat." 25 Kan. App. 2d at 420. Testimony from the Sedgwick County District Attorney explained "the frustration of the State regarding the limited charging options where individuals have perpetuated drive-by shootings." 25 Kan. App. 2d at 420. Where "the defendant discharged a firearm into

an occupied building but no occupant was aware of the threat prior to the gunfire, no one was injured, and the property damage was negligible, the law as it existed . . . limited the State to charging misdemeanor criminal damage to property." 25 Kan. App. 2d at 421.

*Taylor* explained that K.S.A. 21-4219 "filled this gap in the law by establishing a felony statute prohibiting the wanton and willful act itself without regard to the state of mind of the shooter, the victims, or the amount of property damage." 25 Kan. App. 2d at 421. The new statute was also "crafted . . . to parallel the aggravated assault and aggravated battery statutes in terms of punishment." 25 Kan. App. 2d at 422. Thus the statute is "clearly an alternative to aggravated assault or aggravated battery charges where the defendant's acts warrant felony treatment but the facts are not susceptible to the proof required by those statutes." 25 Kan. App. 2d at 422. While the shooting at the vehicle occupied by Kutilek and Swiler arguably was susceptible to the proof required of aggravated battery and aggravated assault, the State chose to proceed under the provisions of K.S.A. 21-4219.

Given this statutory background, we apply the analytical roadmap for determination of multiplicity issues provided by our Supreme Court in its recent *Schoonover* opinion:

"In analyzing a double jeopardy issue, the overarching inquiry is whether the convictions are for the same offense. There are two components to this inquiry, both of which must be met for there to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one? Under the first component, if the conduct is discrete, *i.e.*, committed separately and severally, the convictions do not arise from the same offense and there is no double jeopardy violation. If the charges arise from the same act or transaction, the conduct is unitary and the second component must be analyzed to see if the convictions arise from the same offense. Under the second component, it must be determined whether the convictions arise from a single statute or from multiple statutes. If the double jeopardy issue arises from convictions for multiple violations of a single statute, the unit of prosecution test is applied. If the double jeopardy issue arises from multiple convictions of different statutes, in other words it is a multiple description issue, the same-elements test is applied." 281 Kan. 453, Syl. ¶ 15.

With regard to the first component—whether the convictions arose from the same conduct--neither party argues Gomez' con-

duct was discrete. In other words, there is no suggestion that separate conduct by Gomez supported each count of criminal discharge of a firearm. Because issues not adequately briefed are deemed abandoned, the unitary nature of Gomez' conduct is not an issue here. See *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004).

Instead, we decide the issue Gomez presents: Whether two convictions of criminal discharge of a firearm may be based on the presence of two persons occupying the vehicle fired upon—one who is injured, and one who is not. To decide this we turn to the second component of the double jeopardy inquiry—whether by statutory definition there are two offenses or only one. *Schoonover*, 281 Kan. 453, Syl. ¶ 6. In the present case, since Gomez was convicted of multiple violations of the same statute, *Schoonover* instructs that these facts implicate the subcategory of multiple punishments for the same offense characterized as "unit of prosecution cases" in which "a defendant is convicted of multiple violations of a single statute." 281 Kan. at 471.

As described by our Supreme Court: "In [a unit of prosecution] case, the statutory definition of the crime determines the minimum scope of the conduct proscribed by the statute. . . . When the prosecution is based upon the same conduct, there can be only one conviction for that minimum unit of prosecution." 281 Kan. at 471. Although Gomez filed his brief before the Supreme Court issued *Schoonover*, this is the gravamen of his complaint—that the number of persons in a vehicle does not determine the unit of prosecution under K.S.A. 2005 Supp. 21-4219(b).

"The key to determining the minimum unit of prosecution is legislative intent." 281 Kan. at 471. "The determination of the appropriate unit of prosecution is not necessarily dependent upon whether there is a single physical action or a single victim. Rather the key is the nature of the conduct proscribed." 281 Kan. at 472.

Under federal law, the unit of prosecution is evaluated with "a rule of lenity." 281 Kan. at 472. Our Supreme Court in *Schoonover* cited the example of *Bell v. United States*, 349 U.S. 81, 99 L. Ed. 905, 75 S. Ct. 620 (1955), which analyzed whether the Mann Act was violated once or twice by the transportation of two women

across state lines for immoral purposes. The United States Supreme Court held there was only one violation because Congress had failed "'clearly and without ambiguity'" to "provide for . . . two convictions for the act." 281 Kan. at 472 (citing 349 U.S. at 84). "'When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.'" 281 Kan. at 472 (quoting 349 U.S. at 83).

After reviewing its own precedents, our Supreme Court in *Schoonover* adopted this federal standard for Kansas cases "when a defendant is charged with multiple violations of a single statute." 281 Kan. at 496. The court held:

"[T]he test to determine whether the convictions violate § 10 of the Kansas Constitution Bill of Rights is the same test as used to determine if there is a violation of the Due Process Clause of the Fifth Amendment: whether there is more than one conviction for the allowable unit of prosecution." 281 Kan. at 496.

Federal case law further elucidates the unit of prosecution rule. In *Sanabria v. United States*, 437 U.S. 54, 69-70, 57 L. Ed. 2d 43, 98 S. Ct. 2170 (1978), the United States Supreme Court stated:

"It is Congress, and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. [Citation omitted.] But once Congress has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' [citations omitted] that prescription determines the scope of protection afforded by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this congressional choice."

In *United States v. Chipps*, 410 F.3d 438, 447-48 (8th Cir. 2005), the Eighth Circuit considered the unit of prosecution under a federal assault statute:

"When the same statutory violation is charged twice, the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution. [Citations omitted.] The unit of prosecution is the aspect of criminal activity that Congress intended to punish.

"To determine whether this indictment is multiplicitous, we must decide whether Congress intended to punish assault as a course of conduct, such that the first bit of assaultive conduct (which took place in the house) is of a piece with the second bit (which took place outside), or whether Congress sought to punish

separately individual acts within an assaultive episode. We look to the statutory language, legislative history, and statutory scheme to ascertain what Congress intended the unit of prosecution to be. [Citation omitted.] When Congress fails to establish the unit of prosecution 'clearly and without ambiguity,' we resolve doubt as to congressional intent in favor of lenity for the defendant. [Citation omitted.]"

Returning to the present case, and considering K.S.A. 2005 Supp. 21-4219 as a whole, we note subsection (a) prohibits discharging a firearm at an *unoccupied* dwelling. Under this subsection, the statute is violated without the presence of any person. Under subsection (b), however, a building or vehicle is considered occupied when "*a* human being" is inside it at the time of the shooting. (Emphasis added.) Thus, the presence of one person in a dwelling or vehicle at the time of a shooting constitutes a violation of this subsection. We find no language suggesting that each additional person who occupies a building or vehicle constitutes an additional violation of subsection (b).

As was discussed in *Taylor*, the legislative intent in enacting K.S.A. 2005 Supp. 21-4219 was to punish individuals discharging firearms at certain targets—dwellings, buildings, or vehicles. The statutory scheme, which is focused on the discharge of firearms at these targets, reflects this intent. See *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005) (" 'The legislature is presumed to have expressed its intent through the language of the statutory scheme . . . .' "). The presence of a person inside the target increases the severity level under the statute, but the presence of more than one person neither increases the severity level nor somehow transforms one target into multiple targets for purposes of prosecution.

Moreover, the fact Kutilek suffered bodily harm does not alter the analysis. As our Supreme Court instructed in *Schoonover*, it is the language of the statute, not the number of persons injured, which controls. *Schoonover*, 281 Kan. 453, Syl. ¶ 8. Any injury suffered during the commission of the crime affects the crime severity level under K.S.A. 21-4219, not the number of crimes which occurred.

Our analysis is also compliant with the rule of lenity. The legislature could have simply provided that each person occupying a building or vehicle constitutes a separate violation of K.S.A. 21-4219(a), but it did not enact such a provision. Any ambiguity in the matter should be resolved in favor of Gomez, not the State. See *Schoonover*, 281 Kan. at 472; *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005) (" 'Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute.' ").

K.S.A. 2005 Supp. 21-4219(b) proscribes the unlawful discharge of a firearm at an occupied vehicle or occupied building. Based on *Schoonover's* guidance; federal authorities; and the language, legislative history, and statutory scheme of the offense in question, we hold the number of persons occupying a vehicle or building at the time of the firearm's discharge is not determinative of the unit of prosecution. Accordingly, on the specific issue presented here we hold Gomez' two convictions for violation of K.S.A. 2005 Supp. 21-4219(b) are multiplicitous and violative of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Bill of Rights of the Kansas Constitution.

Given our holding that the two criminal discharge of a firearm at an occupied vehicle convictions are multiplicitous, we decline to consider the alternative claim posited by Gomez that these two convictions also violate K.S.A. 21-3107(2).

In cases of multiplicitous convictions, our Supreme Court has determined a defendant should be sentenced only on the more severe offense. *State v. Winters*, 276 Kan. 34, 43, 72 P.3d 564 (2003). Having determined that Gomez' two convictions of criminal discharge of a firearm at an occupied vehicle are multiplicitous, we reverse his conviction relating to Swiler and vacate the sentence. Because the district court ordered this sentence to run consecutive to an aggravated assault conviction, we remand the case for resentencing on all convictions.

*Multiplicity of the Aggravated Assault and Criminal Discharge*
*of a Firearm At an Occupied Vehicle Convictions Relating*
*to Kutilek*

Gomez next contends his convictions for aggravated assault and for criminal discharge of a firearm at an occupied vehicle relating to Kutilek are multiplicitous. Referring once again to *Schoonover's* analytical roadmap, the first question is whether the charges proceed from the same conduct. Unlike the previous issue, the parties here dispute whether Gomez' conduct was unitary. Four factors should be considered in answering this question:

"(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." *Schoonover*, 281 Kan. at 497.

The convictions at issue here did not proceed from the same conduct. Gomez first pointed a firearm at Kutilek, which caused Kutilek to run back to his vehicle in fear. Shortly thereafter Gomez fired upon the fleeing vehicle with Kutilek and Swiler inside. These actions did not occur at the same time or location. Moreover, there was an intervening event—Kutilek running towards his vehicle, entering it, and driving away after seeing Gomez pointing the firearm at him. Finally, Gomez' subsequent decision to pull the trigger and fire upon the vehicle was a fresh impulse beyond simply frightening Kutilek by displaying the firearm. Because Gomez' actions did not proceed from the same conduct there is no multiplicity and no violation of the Double Jeopardy Clause.

Assuming arguendo the convictions proceeded from the same conduct, however, Gomez' claim involves multiple convictions of different statutes. This implicates a subcategory of multiple punishments for the same offense which *Schoonover* denominates "a multiple description issue." 281 Kan. at 497. Under this subcategory the relevant question becomes: "Does one statute require proof of an element not necessary to prove the other offense?" 281 Kan. at 498.

In the present case, aggravated assault requires placing another person in reasonable apprehension of immediate bodily harm. See

K.S.A. 21-3408 and K.S.A. 21-3410. Criminal discharge of a firearm at an occupied vehicle does not. See K.S.A. 2005 Supp. 21-4219(b). Criminal discharge of a firearm at an occupied vehicle requires discharge of a firearm at an occupied vehicle. See K.S.A. 2005 Supp. 21-4219(b). Aggravated assault does not. See K.S.A. 21-3408 and K.S.A. 21-3410.

Applying the same-elements test, we hold the convictions of aggravated assault in violation of K.S.A. 21-3410(a) and criminal discharge of a firearm at an occupied vehicle in violation of K.S.A. 2005 Supp. 21-4219(b) are not multiplicitous and do not violate the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States or § 10 of the Bill of Rights of the Kansas Constitution.

### Allen Instruction

As part of its jury instructions, the district court gave a deadlocked jury, or *Allen* instruction. See *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896). The instruction was given over Gomez' objection before the jury retired to deliberate. In part, the instruction provided: "This is an important case. If you should fail to reach a decision, this case is left open and undecided. Like all cases, it must be decided sometime." It also stated that, "[t]his does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision."

Gomez claims the district court erred in giving this instruction. He argues the language of the instruction, "[l]ike all cases, it must be decided sometime," misled the jurors "by telling them that they had to make a decision." Gomez points out "[t]he phrase is simply incorrect because a case never has to be decided."

"When reviewing challenges to jury instructions, this court must consider the instructions as a whole and not isolate any one instruction. ' "If the instructions properly and fairly state the law as applied to the facts of the case, and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. [Citations omitted.]" ' " *State v. Mays*, 277 Kan. 359, 378-79, 85 P.3d 1208 (2004).

In *State v. Turner*, 34 Kan. App. 2d 131, 135, 115 P.3d 776 (2005), this court found the language Gomez identified to be "disapproved as an inaccurate statement of the law." Nevertheless, we noted the Kansas Supreme Court's holding in *State v. Makthepharak*, 276 Kan. 563, 569, 78 P.3d 412 (2003), "that disapproval of *Allen*-type instructions 'has been limited to situations in which such an instruction was given to a jury after deliberations were in progress.'" 34 Kan. App. 2d at 133-34.

In the present case, as in *Turner* and *Makthepharak*, the challenged instruction was given before the jury retired, and "[t]here is nothing in the record to support [the] claim that [the] jury was pressured to reach a verdict." 34 Kan. App. 2d at 136. Even though the instruction given in Gomez' case contained an inaccurate statement of the law, it also admonished the jury members not to surrender their honest convictions. Considering the instructions as a whole and the fact that the *Allen* instruction was given before the jury commenced deliberations, we hold the jury could not reasonably have been misled or coerced by this instruction.

The conviction of criminal discharge of a firearm at an occupied vehicle related to Swiler is reversed, and the sentence for that conviction is vacated. The remaining convictions are affirmed, and the case is remanded for resentencing.