NOT DESIGNATED FOR PUBLICATION

No. 117,162

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER MICHAEL DALE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed June 1, 2018. Affirmed in part, reversed in part, and vacated in part.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER, JJ.

LEBEN, J.: Christopher Dale appeals his convictions for aggravated robbery, charges that arose after he used a BB gun to take three cell phones and an iPod from three teenage boys at a skate park. Dale was convicted of two counts of aggravated robbery and one count of theft (one of the boys was off skating and thus wasn't threatened by the BB gun when Dale took that boy's cell phone). Dale argues that all of this was really just a single crime, so (1) he can't be convicted of both theft and aggravated robbery and (2) he can't be convicted of two counts of aggravated robbery. He argues that he should be convicted only of a single count of theft.

Dale based his arguments on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. It protects against receiving multiple punishments for the same offense, something we call multiplicity.

Before returning to the legal arguments, we will briefly outline what happened back in 2009 when the underlying criminal conduct took place. Three teenage boys—Adam Litchkowsi, Austin Mora, and Kyle Shellack—were at a skating park in Olathe. They had their electronics in a pile beside them on the ground while they sat and talked.

At some point, an unfamiliar teen, Drake Rickerson, approached and offered to sell them an iPod. Austin left to skate, but Adam and Kyle made fun of Drake.

Drake left and called his cousin, Megan Clark, hoping she could come to pick him up. But her boyfriend, Christopher Dale, picked up the phone instead. Christopher was in his early 20s at the time. When Drake told Christopher what had happened, Christopher became angry. He grabbed a BB gun and headed to the park along with Megan. She parked the car near the park and stayed with it while Christopher walked off to find Drake.

Eventually, Christopher and Drake ran up to confront Adam and Kyle. Austin was still off skateboarding, 20 to 30 feet away. Christopher pushed Adam's head between his legs and put the gun behind Adam's ear. While Christopher held Adam's head down, Kyle tried to get up to help—but Christopher then put the gun to Kyle's chest. Kyle looked over and saw Drake taking the electronics. Christopher then hit Kyle in the side of his head with the gun.

When Christopher let go of Adam, Adam looked up and saw the two running off with the electronics. Adam said he heard Christopher say, "You just got jacked." Adam

got up to try to get the items back but backed off when Christopher flashed the gun at him. Christopher and Drake got away with each boy's cell phone and Adam's iPod.

Police solved the crime and arrested Christopher and Drake. Police found the stolen electronics and the BB gun in the home where Christopher, Drake, and Megan were all staying.

The State charged Christopher Dale with the aggravated robbery of Adam's cell phone and iPod, the aggravated robbery of Kyle's cell phone, and the theft of Austin's cell phone. Drake entered into a plea agreement with the State and testified against Dale at his trial. A jury convicted Dale on all three counts.

Dale then appealed to our court, and we found that the jury instructions on the aggravated-robbery charges had been misleading. So we set aside the aggravated-robbery convictions—but not the theft conviction—and sent the case back for a new trial on the aggravated-robbery charges. See *State v. Dale*, No. 110,562, 2016 WL 687600 (Kan. App. 2016) (unpublished opinion); *State v. Dale*, No. 110,562, 2015 WL 2414264 (Kan. App. 2015) (unpublished opinion).

At that point, Dale raised an argument he hadn't made at the first trial—that the two aggravated-robbery charges were multiplicitous. He also argued that even trying him for a single aggravated-robbery charge at this point would violate his double-jeopardy rights because he had already been convicted of theft for conduct arising out of the same incident. The district court denied Dale's motion to dismiss the aggravated-robbery charges based on these arguments.

After that, the parties agreed to try the charges to the district court, sitting without a jury, using the transcripts of the original trial and a preliminary hearing. Based on that

3

evidence, the district court convicted Dale on both counts of aggravated robbery. Dale again appealed to our court.

We begin our analysis by setting out the standards by which we judge a multiplicity claim. Our Supreme Court set out a two-part framework for this analysis in *State v. Schoonover*, 281 Kan. 453, Syl. ¶¶ 3-4, 133 P.3d 48 (2006). First, we look to see whether the charges arose from the same conduct—something the courts call "unitary" conduct. If so, we move on to a second test that has two forms, depending on whether the crimes being compared arise under a single statute.

Here, the theft and aggravated-robbery convictions arise under different statutes. In that case, we look at whether the two crimes have the same elements. If one statute requires proof of an element unnecessary to prove the other offense, then the statutes don't define the same crime and are not multiplicitous—unless one crime is a lesser-included offense of the other. In that case, the defendant may be convicted only of one offense. 281 Kan. at 497-98; K.S.A. 2017 Supp. 21-5109.

Meanwhile, the two aggravated-robbery offenses arise under the same statute. In that case, for the second part of the test, we apply a unit-of-prosecution test that looks at how the Legislature has defined the scope of the conduct that violates the statute. We must allow only one charge for each allowable unit of prosecution under the statute. *Schoonover*; 281 Kan. at 497-98.

Let's start with the first part of that test, which applies in both situations. To determine whether conduct is unitary, we consider (1) whether the acts occurred at or near the same time; (2) whether the acts occurred at the same location; (3) whether there was a causal relationship between the acts, in particular whether there was any intervening event; and (4) whether there was a fresh impulse motivating any of the

conduct. 281 Kan. at 497; see *State v. Hood*, 297 Kan. 388, Syl. ¶ 4, 300 P.3d 1083 (2013).

Dale took all the electronics at the same time and place. And while he separately pushed Adam's head down and put a gun into Kyle's chest, we view all the activity as the carrying out of a single plan to take the boys' property.

The State argues that there was an intervening event separating the two robberies— Kyle standing up to try to stop Dale, an act Dale responded to by putting the gun to Kyle's chest. But we see Dale as having embarked on a singular act of taking the boys' electronics with the help of a gun (and an accomplice). No outside event interrupted Dale, and everything occurred quickly. We find the conduct was unitary and move on to the second step of the analysis.

As for the theft and aggravated-robbery charges, we apply the same-elements test. Theft requires an act "done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property . . . [by o]btaining or exerting unauthorized control over the property." K.S.A. 21-3701(a)(1). Robbery, meanwhile, "is the taking of property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 21-3426. A robbery becomes aggravated when committed by a person armed with a dangerous weapon or when the robber inflicts bodily harm on someone during the robbery. K.S.A. 21-3427.

There are some differences in the way the two statutes are worded, and robbery requires a taking by force, not merely a theft. But Kansas courts have consistently held that theft is a lesser-included crime of both robbery and aggravated robbery. See, e.g., *State v. Plummer*, 295 Kan. 156, 164, 283 P.3d 202 (2012); *State v. Romero*, No. 105,158, 2012 WL 2924537, at *4 (Kan. App. 2012) (unpublished opinion); *State v. Fleming*, No. 106,104, 2012 WL 4794560, at *10-13 (Kan. App. 2012) (unpublished

5

opinion). Because Dale's actions were unitary and theft is a lesser-included offense of robbery, the convictions for theft and aggravated robbery were improperly multiplicitous. See K.S.A. 2017 Supp. 21-5109. When an appellate court finds multiplicitous convictions, we reverse the less-severe offense. See *State v. Gomez*, 36 Kan. App. 2d 664, 673, 143 P.3d 92 (2006); *State v. Garner*, No. 102,790, 2012 WL 4794448, at *5 (Kan. App. 2012) (unpublished opinion); K.S.A. 21-5109(b) ("Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both."). We will therefore reverse Dale's theft conviction.

For the two aggravated-robbery charges, we must apply the unit-of-prosecution test. The Kansas Supreme Court applied that test to aggravated-robbery convictions in *State v. Pham*, 281 Kan. 1227, 136 P.3d 919 (2006). In *Pham*, the court said that "under proper circumstances, one transaction can support more than one count of aggravated robbery." 281 Kan. at 1251. The *Pham* court cited *State v. Jackson*, 218 Kan. 491, 493, 543 P.2d 901 (1975), in support of that proposition. In *Jackson*, the court approved three counts of aggravated robbery when property was taken at the same time by force from three different victims in a retail pharmacy. In *Pham*, by contrast, "only one person was relieved of [the] items of property" by force, even though more than one person owned some of the items taken. 281 Kan. at 1251. So in *Pham*, the court held that only one aggravated-robbery charge could be brought. 281 Kan. at 1251.

Here, Dale used a gun to take property owned by Adam and Kyle from the presence of each of them. Dale pushed Adam's head between his legs and put a gun behind his ear. Dale separately put his gun to Kyle's chest. The State could charge two counts of aggravated robbery on these facts. See *Garner*, 2012 WL 4794448, at *4-5.

We have now addressed the primary issues on appeal, but there is still one procedural quirk to this case that we must address. Before Dale's first trial and in his first appeal, Dale didn't raise the issues he has brought in this appeal. The State argues that he

6

should have—and suggests that the law-of-the-case doctrine prevents him from doing so now. Dale counters that the State didn't raise the law-of-the-case doctrine in the district court when Dale raised these issues following the first appeal but before he was retried on the aggravated-robbery charges. Because the State didn't raise the issues then, Dale argues, it shouldn't be allowed to raise them for the first time on appeal.

The law-of-the-case doctrine generally prevents a party from relitigating an issue already decided on appeal in later stages of the same case. *State v. Parry*, 305 Kan. 1189, Syl. ¶ 1, 390 P.3d 879 (2017). Here, when Dale was first convicted of two counts of aggravated robbery and two counts of theft after his first trial, he didn't raise the multiplicity issue on appeal. A related doctrine on finality of judgments, called res judicata, also generally provides that once an appeal is taken from a criminal case, all issues that weren't raised but could have are generally deemed to have been waived. See *State v. Kleypas*, 305 Kan. 224, 240-41, 382 P.3d 373 (2016), *cert. denied* 137 S. Ct. 1381 (2017).

We note that in the *Kleypas* case, although the circumstances are different from those in Dale's case, our Supreme Court allowed new arguments when the court considered a second direct appeal within the same case, 305 Kan. at 244, and even allowed a new multiplicity argument to be considered. 305 Kan. at 263-64. We think that is proper here too.

But Dale tries to use this flexibility to raise a new argument in the second appeal to gain an advantage he wouldn't have gotten had he raised the issues before the first trial. Dale wants to take advantage of the affirmance in the first appeal of only his theft conviction. Had the State initially tried Dale only on a theft charge and gotten a conviction, the State couldn't later have tried him for aggravated robbery arising out of that same criminal act. That would be a violation of his double-jeopardy rights.

7

Dale argues that's essentially what happened here. After he had already been convicted of theft, the State retried him for aggravated robbery. He argues that's a violation of his double-jeopardy rights. But had he raised the issue in a more timely manner—before the first trial—he would have been entitled only to the relief we are awarding him: deletion of the multiplicitous theft conviction. We see no reason Dale should get a reward for raising the issue only before his retrial on the aggravated-robbery charges.

We note that the sentence entered by the district court for the theft conviction was made concurrent with the aggravated-robbery convictions. As a result, reversing the theft conviction and vacating that sentence does not affect the overall time Dale must serve, so a resentencing is not needed.

We reverse Dale's theft conviction and vacate that sentence. The district court's judgment is otherwise affirmed.